JOHN J. KELLY, CHIEF STATE'S ATTORNEY *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(14352)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, Js.

Argued December 6, 1991—decision released March 3, 1992

*Mary H. Lesser,* assistant state's attorney, for the appellant (plaintiff).

*Constance L. Chambers,* assistant general counsel, for the appellee (named defendant).

*Barry D. Guliano,* for the appellee (defendant Journal Inquirer).

*Robert H. Boone,* pro se, the appellee (defendant).

PETERS, C. J. The dispositive issue in this appeal is whether the substituted plaintiff, Richard N. Palmer, chief state's attorney, was aggrieved by the decision of the defendant freedom of information commission (FOIC) determining that General Statutes § 1-19 (a) of the Freedom of Information Act (FOIA)[1] requires the

---

[1] "[General Statutes] Sec. 1-19. ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain

disclosure of an arrest report during the pendency of a criminal prosecution. The dispute underlying this appeal arose after the chief of police of the town of Windsor Locks refused to release publicly a police report concerning the arrest of two individuals. A newspaper editor filed a complaint with the FOIC seeking disclosure of the report. Although the criminal matter had been disposed of and the chief of police had released the arrest report by the time the FOIC rendered its decision on the matter, the FOIC determined that the police chief should have disclosed the arrest report when it was first requested and ordered the police department to comply fully with the disclosure requirements of § 1-19 (a) in the future. The plaintiff, who had been denied party status in the FOIC proceeding, appealed the decision to the Superior Court. The Superior Court granted the FOIC's motion to dismiss the appeal upon concluding that the plaintiff had not been aggrieved by the FOIC decision. The plaintiff appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023. We reverse.

The facts underlying the plaintiff's appeal are undisputed. On September 12, 1989, the Windsor Locks police arrested two persons who were distributing racist and anti-Semitic literature in front of a convenience store. The police charged one with possession of a dangerous weapon, and the other with reckless endanger-

all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

ment. The following day, Donald Michak, a reporter from the Journal Inquirer, asked for the arrest report pertaining to this incident. Following a consultation with the local state's attorney's office, the chief of police advised Michak that, because the criminal case was pending, he would not release the arrest report.

On September 19, 1989, Robert H. Boone of the Journal Inquirer filed a complaint with the FOIC claiming that the chief of police had violated § 1-19 (a) of the FOIA by his refusal to release the arrest report. At the March 1, 1990 FOIC hearing on the matter, the chief of police testified that his nondisclosure of the requested report was based on the need to protect witnesses and to safeguard any further investigation.

After the hearing officer issued his proposed decision requiring disclosure, the chief of police asked that the hearing be reconvened. On June 14, 1990, the plaintiff filed a motion to intervene as a party before the FOIC. At its regular meeting on June 27, 1990, the FOIC voted to reconvene the hearing and granted the plaintiff intervenor status, but not party status.

At the reconvened hearing held on July 30, 1990, the plaintiff claimed that the arrest report was protected from unconditional disclosure pursuant to the statutes and rules of discovery in General Statutes § 54-86b,[2] Practice Book §§ 746, 752 and 753,[3] General Statutes

[2] General Statutes § 54-86b provides in pertinent part: "(a) In any criminal prosecution, after a witness called by the prosecution has testified on direct examination, the court shall on motion of the defendant order the prosecution to produce any statement oral or written of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified, and the court shall order said statement to be delivered directly to the defendant for his examination and use."

[3] "[Practice Book] Sec. 746. [DISCLOSURE BY THE PROSECUTING AUTHORITY]——INFORMATION NOT SUBJECT TO DISCLOSURE

"Except for the substance of any exculpatory material contained herein, Sec. 740 does not authorize or require disclosure or inspection of:

§§ 1-19 (b) (3) and (4), 1-19b (b), and 1-20b[4] of the FOIA. Citing article 23 of the amendments to the Connecti-

"(1) Reports, memoranda or other internal documents made by a prosecuting authority or by law enforcement officers in connection with the investigation or prosecution of the case;

"(2) Statements made to prosecuting authorities or law enforcement officers except as provided in Sec. 748 . . . ."

"[Practice Book] Sec. 752. [DISCLOSURE OF STATEMENTS——STATEMENTS OF WITNESS]—— ——PRODUCTION FOLLOWING TESTIMONY

"After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statements of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

Practice Book § 753 provides in pertinent part: "If the entire contents of a statement requested under Sec. 752 relate to the subject matter of the testimony of the witness, the judicial authority shall order the statement to be delivered directly to the defendant or his counsel for his examination and use."

[4] General Statutes § 1-19 (b) provides in pertinent part: "Nothing in [the FOIA], shall be construed to require disclosure of . . . (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known, (B) information to be used in a prospective law enforcement action if prejudicial to such action, (C) investigatory techniques not otherwise known to the general public, (D) arrest records of a juvenile, which shall also include any investigatory files, concerning the arrest of such juvenile, compiled for law enforcement purposes, (E) the name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof or (F) uncorroborated allegations subject to destruction pursuant to section 1-20c; (4) records pertaining to strategy and negotiations with respect to pending claims and litigation to which the public agency is a party until such litigation or claim has been finally adjudicated or otherwise settled . . . ."

General Statutes § 1-19b provides in pertinent part: "(b) Nothing in [the FOIA] shall be deemed in any manner to (1) affect the status of judicial records as they existed prior to October 1, 1975, nor to affect the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state . . . ."

"[General Statutes] Sec. 1-20b. RECORD OF AN ARREST AS PUBLIC RECORD. Notwithstanding any provision of the general statutes to the contrary, any record of the arrest of any person, other than a juvenile, except a rec-

cut constitution[5] and General Statutes §§ 51-276[6] and 51-286 (d) and (e),[7] the plaintiff also claimed that the chief of police was acting as the plaintiff's agent.[8]

ord erased pursuant to chapter 961a, shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-15 and subsection (a) of section 1-19. For the purposes of this section, 'record of the arrest' means the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested."

[5] Article 23 of the amendments to the Connecticut constitution provides in pertinent part: "Article fourth of the constitution is amended by adding a new section to read as follows: There shall be established within the executive department a division of criminal justice which shall be in charge of the investigation and prosecution of all criminal matters. Said division shall include the chief state's attorney, who shall be its administrative head, and the state's attorneys for each judicial district, which districts shall be established by law. The prosecutorial power of the state shall be vested in a chief state's attorney and the state's attorney for each judicial district. The chief state's attorney shall be appointed as prescribed by law."

[6] "[General Statutes] Sec. 51-276. DIVISION ESTABLISHED. There is hereby established the division of criminal justice within the executive department, which shall be in charge of the investigation and prosecution of all criminal matters in the superior court. The division of criminal justice shall be an agency within the executive department with all management rights except appointment of all state's attorneys."

[7] General Statutes § 51-286 provides in pertinent part: "(d) This section shall not be construed to limit the authority of the division of criminal justice to require the assistance of state and local police departments in the investigation of any matter with which the division is concerned. If any such assistance is required, the division of criminal justice shall have primacy concerning any such investigation, provided the state and local police shall maintain any investigatory authority provided by law. Any conflict between the division of criminal justice and the state and local police with respect to any such investigation shall be resolved by the chief state's attorney.

"(e) All state and local police, law enforcement and criminal justice agencies shall cooperate with the division in carrying out the provisions of this chapter and shall provide such information and assign such personnel as may be required."

[8] General Statutes § 1-19c provides that "[f]or the purposes of subsection (a) of section 1-18a, the division of criminal justice shall not be deemed to be a public agency except in respect to its administrative functions." Subsection (a) of § 1-18a defines the term "public agency" within the FOIA. The plaintiff's claim, apparently, was that because the chief of police was acting as the plaintiff's agent in investigating the crime and withholding the reports, the arrest record was exempt from the FOIA pursuant to § 1-19c.

The FOIC issued its final decision on September 19, 1990. It concluded that no agency relationship existed between the police and the plaintiff, and that arrest records in general were public records within the purview of the FOIA. The commission then concluded that, except for the names and addresses of witnesses, the arrest report at issue was not exempt from disclosure and, accordingly, that the chief of police had failed to provide the arrest report promptly as required by § 1-19 (a). The FOIC ordered the chief of police to "comply with the disclosure requirements of § 1-19 (a)," and cautioned him "to take care to comply with the law in the future or [he] may risk further consequences for [his] continuing disregard of the law."

The chief of police and the plaintiff each filed separate appeals in the Superior Court.[9] In his appeal, the plaintiff claimed that the FOIC had improperly denied him party status and had improperly concluded that police arrest reports were disclosable pursuant to § 1-19 (a) of the FOIA during the pendency of a criminal case. The FOIC moved to dismiss the appeal alleging that the plaintiff lacked standing pursuant to § 1-21i.[10] The trial court conducted a hearing on the motion that focused primarily on the issue of whether the plaintiff, not having been named a party in the FOIC hearing, could appeal the decision. In its memorandum of decision, the trial court concluded that "the FOIC's argument that [the plaintiff] lacks standing to appeal the FOIC's order solely on the basis that he lacks 'party status' is unavailing on the facts of this

[9] The chief state's attorney was named a party defendant in the chief of police's appeal, *Gifford* v. *Freedom of Information Commission,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-90-0385103-S.

[10] General Statutes § 1-21i provides in pertinent part: "(d) Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183 . . . ."

case."[11] It went on, however, to conclude that the plaintiff was not aggrieved and therefore lacked standing because: (1) the prospective FOIC order was directed solely to the chief of police and thus any harm to the plaintiff was merely speculative; and (2) the plaintiff "has failed to allege facts that would, if proved, show that he is aggrieved as a matter of law."

The plaintiff filed a motion to reconvene and to reargue maintaining that there had never been a dispute over aggrievement, and that he had not had the opportunity to present a case on that issue.[12] The court heard argument on the motion, but declined to reconvene the case and to find aggrievement.

On appeal to this court, the plaintiff alleges that the trial court took too narrow a view of aggrievement in this case. Despite the fact that the FOIC order was both prospective and addressed to the chief of police, the plaintiff claims that he is aggrieved because: (1) the release of an arrest report potentially has a prejudicial effect on a pending criminal prosecution; (2) requiring disclosure of arrest reports pursuant to the FOIA

---

[11] We recently held that in order to appeal a decision of the FOIC pursuant to General Statutes § 1-21i (d), a plaintiff need not show that he was actually granted party status or that he was entitled as of right to be made a party to the underlying proceeding. He need show only that he has been aggrieved by a decision of the FOIC. *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 230, 602 A.2d 1019 (1992).

[12] The following colloquies occurred at the December 10, 1990 hearing on the FOIC's motion to dismiss:

"The Court: . . . Actually, the question, as I see it, though, is not whether the disclosure should or shouldn't have been done but what is the standing here? And *I don't mean that to be the equivalent of aggrievement but the standing of the plaintiff not on the issue of aggrievement* . . . . What I understand this is about is whether a party who is not a party but is an intervenor has the right to appeal.

"Ms. Chambers [counsel for the FOIC]: Correct.

* * *

"The Court: . . . I don't think you're seriously contesting aggrievement.

"Ms. Chambers: I wouldn't contest aggrievement, no."

conflicts with the rules of discovery that an arrest record is a statement of a witness that is not disclosable until the witness has testified; see *State* v. *Cohane,* 193 Conn. 474, 494 n.15, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); (3) the FOIC's decision violates an exception under the FOIA for records used for strategy and negotiations in pending litigation; and (4) the decision eliminates the criminal justice division's exemption from the FOIA. We conclude that the plaintiff is aggrieved by the FOIC order.

Aggrievement is essentially an issue of standing. Unless a plaintiff can establish that he is aggrieved by a decision of an agency, he has no standing to appeal. *Beckish* v. *Manafort,* 175 Conn. 415, 419, 399 A.2d 1274 (1978); see also *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 230, 602 A.2d 1019 (1992). In administrative appeals filed pursuant to § 1-21i (d), we have adopted a test for aggrievement that requires a plaintiff to show: "(1) a specific personal and legal interest in the subject matter of the FOIC decision; and (2) a special and injurious effect on this specific interest." *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 649, 556 A.2d 1020 (1989); see also *Rose* v. *Freedom of Information Commission,* supra, 230; *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 299–300, 524 A.2d 636 (1987).

This fundamental test is not to be mistaken for a formalistic and rigid formula, applied without regard to its purpose. We have consistently stated that "[s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously

represented." (Internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission,* supra, 223; *Board of Pardons* v. *Freedom of Information Commission,* supra, 648–49. " 'As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great . . . .' " *Board of Pardons* v. *Freedom of Information Commission,* supra, 649, quoting *Maloney* v. *Pac,* 183 Conn. 313, 321, 439 A.2d 349 (1981). Moreover, "[a]ggrievement is established if there is some possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission,* supra, 230.

In numerous counts of his complaint, the plaintiff properly pleaded his claims of aggrievement. "It was the function of the trial court to determine . . . first, whether the plaintiff['s] allegations if they should be proved would constitute aggrievement as a matter of law, and second, if as a matter of law they would constitute aggrievement, then whether [the] plaintiff proved the truth of his allegations." *Nader* v. *Altermatt,* 166 Conn. 43, 54–55, 347 A.2d 89 (1974). Aggrievement is "a question of fact for the trial court and the plaintiff has the burden of proving that fact." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978); see also 2 F. Cooper, State Administrative Law (1965) pp. 538–41. "The conclusions reached by the trial court cannot be disturbed on appeal unless the subordinate facts do not support them." *Nader* v. *Altermatt,* supra, 55.

The trial court found the plaintiff not to be aggrieved because the "FOIC order that is the subject of the plaintiff's appeal is directed solely at the Chief of Police of Windsor Locks. Regardless of [the plaintiff's] action, the Chief of Police may or may not decide to release arrest reports on his own initiative in the future. Thus,

any harm that the plaintiff . . . may suffer as a result of the FOIC's prospective order is speculative." The court further stated that the plaintiff had "failed to allege facts that would, if proved, show that he is aggrieved as a matter of law by the FOIC's prospective order." It offered no additional findings in its memorandum of decision. Consequently, looking solely at the court's written decision, it appears that the trial court found that the plaintiff had failed to satisfy the first prong of the test enunciated in *Nader* v. *Altermatt,* supra, i.e., that the allegations in the complaint, if proved, would constitute aggrievement as a matter of law.

At the two hearings conducted on this matter, however, the trial court appeared to focus its attention not on the sufficiency of the plaintiff's allegations, but on the fact that the order was not addressed to the plaintiff and that it was prospective in nature because the arrest report at issue had already been disclosed. Nowhere in the record did the trial court (or the FOIC) question the accuracy of the facts alleged by the plaintiff in his complaint. At the hearing on the plaintiff's motion to reconvene, the trial court, in response to the plaintiff's allegations that the order would affect his discovery rights, concluded that "everything [the plaintiff's attorney] says is true. That, yes, [the plaintiff is] going to have a tough time with these discovery rules under this order. The only question then becomes, is whether or not under the edicts set forth by the Supreme Court, that that is aggrievement as a matter of law." When the plaintiff brought to the court's attention the fact that aggrievement had not been at issue in the December 10, 1990 hearing and suggested that the court allow evidence on the issue of aggrievement, the court replied, "[w]ell, there's no dispute on the facts," and "[s]o, there wouldn't be any purpose for taking evidence [on aggrievement]." The trial court

later stated that "I don't think there's any question as to what the facts are." Because it is evident from the record that the trial court considered the facts contained in the plaintiff's allegations of aggrievement proved, we need only consider whether these allegations constitute aggrievement as a matter of law.

In the circumstances of this case, it is inconsequential that the order was directed to the chief of police and not to the plaintiff. Aggrievement is not restricted to persons to whom the agency order is directed. A person may legitimately claim to have been adversely affected by an administrative or judicial action without having been the person to whom the order is directed. In *In re Application of Pagano*, 207 Conn. 336, 340–41, 541 A.2d 104 (1988), we held that any attorney who is admitted to the bar of this state, provided that he appear and participate in a suspended attorney's proceeding for reinstatement, can be aggrieved by a court's order of reinstatement to the bar. In *State Medical Society* v. *Board of Examiners in Podiatry,* supra, we determined that, for purposes of demonstrating aggrievement, a plaintiff physician, who was not a podiatrist, was adversely affected by a declaratory ruling of the board of examiners in podiatry regarding the scope of podiatry practice in the state. Thus, persons who have neither sought an administrative action nor benefited therefrom, and who are not the subjects of an order, may nevertheless be aggrieved. The test for aggrievement is whether personal rights are affected by an order, no matter who the addressee of that order may be. See *Rose* v. *Freedom of Information Commission,* supra (plaintiffs aggrieved by order directing board of education to disclose the substance of a recommendation to take disciplinary action against them).

While the nature of the FOIC's order does not automatically disqualify the plaintiff from demonstrating

aggrievement, the order by itself does not prove his aggrievement. The plaintiff must demonstrate his specific, personal and legal interest in the subject matter of the order. "Allegations and proof of mere generalizations and fears are not enough to establish aggrievement." *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 508, 242 A.2d 705 (1968); see also *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 668, 560 A.2d 975 (1989); *Tucker* v. *Zoning Board of Appeals,* 151 Conn. 510, 514, 199 A.2d 685 (1964); *Joyce* v. *Zoning Board of Appeals,* 150 Conn. 696, 698, 187 A.2d 239 (1962).

The plaintiff's allegations in this case cannot be dismissed as "mere generalizations and fears." The precise nature of his aggrievement is clear from the uncontroverted allegations contained in his complaint. The plaintiff alleged that, by statute, he is the person responsible for the investigation and prosecution of criminal cases throughout the state. The chief state's attorney and the prosecutors he represents, because they are involved in the prosecution of every criminal case in this state, are uniquely interested in an order of the FOIC requiring the police to disclose arrest reports during the pendency of a criminal case. The trial court agreed, noting that "we could carry this out and [the plaintiff is] the first one, I suppose, that you could say is affected by [the FOIC order] . . . . He, probably more so than others." We conclude that the plaintiff has a direct interest in this matter that is distinct from that of the public as a whole, and as such, he has satisfied the first requirement of aggrievement.

The plaintiff further alleged in his complaint that: (1) the case involved a request for release of a record that was maintained and used by the division of criminal justice to prosecute a pending criminal case, and that release of such an arrest report would have a prejudicial effect on his ability to prosecute; (2) the plaintiff's

rights, duties, interests and privileges in the prosecution of crimes were adversely affected by the FOIC's decision; (3) the arrest report contained a narrative of the incident, witnesses' statements, names and addresses of witnesses, victim and arrestees; (4) the arrest report was to be used in a future law enforcement proceeding and disclosure would be prejudicial to that proceeding; (5) the discovery process in criminal cases precludes the release of an arrest report; (6) the report was used in the strategy and negotiations of a pending criminal case and was exempt from disclosure; and (7) the police were acting as the plaintiff's agents in creating the report and refusing its release, and the report was a record of the plaintiff, who is not subject to the jurisdiction of the FOIC.[13] We conclude that this complaint's clear and specific allegations sufficiently demonstrated the plaintiff's aggrievement.

We disagree with the trial court's conclusion that the plaintiff was not aggrieved by the FOIC order because "any harm that the plaintiff . . . may suffer as a result of the FOIC's prospective order is speculative." The plaintiff has demonstrated that his present right to rely on existing discovery processes is adversely affected by the order.[14] Moreover, the plaintiff has demonstrated that his present interest in the unimpeded

[13] The plaintiff maintained at the agency level that release of arrest reports would result in prejudicial pretrial publicity and the inability to obtain an unbiased jury. He also stated that the release of arrest reports during the pendency of an ongoing prosecution, even if witness names were redacted, could result in witness tampering or intimidation. He alleged before the trial court that disclosure of an arrest report that contains a statement of the defendant could violate a defendant's rights.

[14] At the present time, the police are under orders to release any reports requested, unless disclosure would be prejudicial to a prospective law enforcement proceeding within the meaning of General Statutes § 1-19 (b) (3). The exemption from disclosure contained in § 1-19 (b) (3) does not, however, afford the plaintiff an opportunity to offer an opinion as to the prejudicial effect public disclosure would have on a pending criminal case.

prosecution of criminal cases is jeopardized by the FOIC decision that arrest reports are disclosable by local and state police, in some instances, prior to trial. While the chief of police is aggrieved by virtue of the fact that he faces possible sanctions if he fails promptly to disclose arrest reports in the future; see *Board of Pardons* v. *Freedom of Information Commission,* supra, 650; the plaintiff is aggrieved because of the impact the order will have on the prosecution of future cases for which he bears statutory responsibility. Although prospective in nature, the order of the FOIC has a present chilling effect on the actions of the police that in turn affects the present discovery and prosecution practices of the plaintiff. Id., 650–51.

On this record, we conclude that the allegations contained in the plaintiff's complaint were sufficient to establish that his specific personal and legal interests in the prosecution of criminal cases have been specially and injuriously affected. In fact, it is the plaintiff, of all the litigants in this case, who has the most at stake in its resolution, and who will provide the "hot controversy" and vigorous presentation of the issues that standing is intended to ensure. The plaintiff and the entire division of criminal justice rely upon the statutes and rules that regulate criminal discovery and they are specially interested in the proper prosecution of criminal cases. As we have previously quoted with approval, " '[i]t must be borne in mind . . . that it has always been held that a professional man has standing to prevent the *improper* invasion of his profession.' (Emphasis added.)" *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 303, quoting *Felix* v. *Wax,* 13 Pa. D. & C. 2d 600, 604 (1958).

The question whether the FOIC correctly concluded that disclosure of arrest reports prior to trial is required by § 1-19 (a) of the FOIA involves the merits of its decision and "is an issue on which we express no opinion,

for '[s]tanding is an examination of the parties, not the merits of the action.' *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 64, 441 A.2d 68 (1981)." *Light Rigging Co.* v. *Department of Public Utility Control,* 219 Conn. 168, 177, 592 A.2d 386 (1991). Having found no aggrievement, the trial court did not reach the merits. The arguments and briefs in this appeal similarly were confined to the issues of standing and aggrievement. The trial court will be required, on remand, to consider whether the order of the FOIA should be affirmed.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.