[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Bristol Housing Authority (BHA), appeals CT Page 12601 a decision of the defendant, Freedom of Information Commission (FOIC), in its contested case docket number FIC 93-311,Samuel Kasparian v. Bristol Housing Authority, finding that BHA violated FOIC laws, following a hearing held pursuant to General Statutes § 1-21i(b). The FOIC acted pursuant to General Statutes § 1-21j. BHA appeals the FOIC decision pursuant to General Statutes §§ 1-21i(d) and 4-183.
Notice of the final decision of the FOIC was mailed on January 26, 1994. (ROR 15, Notice of Final Decision). BHA appealed on February 22, 1994. The FOIC filed an answer and return of record. The parties filed briefs. The appeal was heard by the court (L. Dorsey, STR) on October 18, 1994.
Facts
In its Memorandum of Law FOIC presents a "Statement of Facts" supported by numerous references to the Return of Record (ROR), all of which this court finds well supported. Those Statements of Fact are as follows:
In July of 1993, the plaintiff Bristol Housing Authority formed a "committee of the whole" to determine which of its management contracts were coming to an end, whether the contracts should be renewed or the individual managers replaced, and to hold a special meeting to discuss those issues before the authority's next regular meeting. (ROR 15, Final Decision ¶ 14; ROR 5, Minutes of July 20, 1993 meeting; ROR 13, Transcript, p. 66). In particular, the plaintiff authority was divided as to whether to renew the contract of its executive director, Samuel Kasparian, with three members of the authority opposed to doing so. (ROR 13, Transcript, p. 43).
The housing authority then met for about an hour on September 28, 1994. (ROR 15, Final Decision; and ROR 13, Transcript, p. 67). For the first ten or twenty minutes, they discussed whether to accept a term in the collective bargaining agreement. (Id.). For the balance of the meeting, the authority discussed whether to renew the employment contracts of three of its managers, focusing upon Kasparian's contract. (Id.). The authority's counsel advised the plaintiff not to discuss Kasparian's performance, although certain commissioners did express their displeasure with their executive director. (ROR 13, Transcript, pp. 24, 57). However, the focus of the discussion concerning Kasparian's contract was whether it should be renewed CT Page 12602 or allowed to lapse. (ROR 15, Final Decision, ¶ 10). A consensus was reached not to renew Kasparian's contract, but rather to allow him to apply for the position when the position was advertised, and permit him to go through the selection process. (ROR 13; Transcript, p. 43). A consensus was also reached to authorize the authority's counsel to seek a legal opinion, consistent with his own, about Kasparian's contract. (ROR 15, Final Decision, ¶ 30). The meeting was not open to the public, minutes were not filed and Kasparian was not notified that the issue of his contract renewal would be discussed. (ROR 15, Final Decision ¶¶ 21, 22 and 36). On October 6, the plaintiff housing authority met and, without discussion, voted not to renew Kasparian's contract. (ROR 8, Minutes of October 6, 1993 meeting).
Kasparian then filed an appeal concerning his exclusion from the plaintiff's September 28, 1993 meeting with the FOIC. (ROR 1, Complaint). Kasparian alleged that the housing authority had failed to keep minutes of its September 28, 1993 meeting, and that the action to authorize the second legal opinion should have been taken in public session. (Id.). The FOI Commission held a hearing on the complaint on December 10 and December 14, 1993, at which time Commissioner Kenneth E. Grube presided as hearing officer. (ROR 15, Transmittal of Proposed Finding and Report of Hearing Officer). At the FOI Commission's hearing on Kasparian's appeal, the plaintiff maintained that the September 28, 1993 meeting was properly closed to the public because it concerned strategy with respect to the employment of its executive director, and because it was a meeting of a "personnel search committee" and thus excluded from the FOIC Act's open meetings, citing General Statutes § 1-18a(b). (ROR 15, Final Decision). The plaintiff further maintained that it was not obligated to notify Kasparian of the meeting because his performance was not discussed. (Id. ¶ 25; see also ROR 13, Transcript).
As a result of the FOI Commission's hearing, Commissioner Grube issued a report that was transmitted to the parties on June 11, 1993. (ROR 14, Transmittal of Proposed Finding and Report of Hearing Officer). The proposed decision was then considered by the full FOI Commission at its January 26, 1994 regular meeting and adopted as its final decision. (ROR 15, Notice of Finald [Final] Decision). In its Final Decision, the FOI Commission concluded that the plaintiff's defense that it convened to discuss strategy concerning the executive director's position did not state an exclusion to the FOI Act's open meetings requirements. (ROR 15, Final Decision). The FOI Commission also found CT Page 12603 that plaintiff had never formed a "personnel search committee" within the meaning of General statutes § 1-18a(f), and that, in any event, the September 28, 1993 meeting was held to discuss Kasparian's contract, not to review, discuss or select any employment candidates. (ROR 15, Final Decision, ¶ 14). In fact, the Commission found that the plaintiff had formed the committee of the whole for the express purpose of reviewing contracts and determining whether to renew the contracts of existing employees, and that no positions had even been advertised at the time of the September 28, 1993 meeting. (ROR 15, Final Decision, ¶ 16; see also ROR 5, July 20 minutes, and ROR 8, October 6 minutes). The FOI Commission also found that the plaintiff had: indeed discussed Kasparian's employment, appointment or dismissal in closed session, and had therefore violated Conn. Gen. Stat. §§ 1-18a(e)(1) and 1-21(a) by excluding the public without properly convening in executive session, by failing to file a notice of the meeting, by failing to notify Kasparian in advance that his employment would be discussed in closed session and giving him an opportunity to require that discussion to be in public, and by failing to keep minutes of the meeting that reflected what transpired, including the "consensus" vote to authorize the legal opinion. (ROR 15 Final Decision).
Although Kasparian had requested that the FOI Commission declare the actions taken at the September 28, 1993 meeting null and void, the Commission declined to impose that remedy. Instead, the Commission ordered the housing authority to file minutes of the September 28, 1993 meeting; to undergo remedial education on the requirements of the FOI Act; and to henceforth comply with the FOI Act's requirements. (Id. ¶¶ 1, 3 and 4 of the order). (The FOI Commission also made certain findings and conclusions, and also issued an order, with respect to which the plaintiff has not appealed.) Notice of the Final Decision was mailed on January 26, 1994. (ROR 15, Notice of Final Decision). It is from that decision that the plaintiff has appealed to this court.
The appeal and service were timely. General Statutes § 4-183(c). The plaintiff has also satisfied the test for aggrievement which requires a showing of: "(1) a specific personal and legal interest in the subject matter of the FOIC decision; and (2) a special and injurious effect on this specific interest." Kelly v. FOIC, 221 Conn. 300, 308 603 A.2d 1131
(1992). Following testimony from Joan Courchaine, a member of BHA, the court found that BHA had been aggrieved, and FOIC does CT Page 12604 not dispute aggrievement.
Under General Statutes § 1-21i(d), appeals from decisions of the FOI Commission are brought pursuant to the Uniform Administrative Procedure Act (hereinafter "UAPA"), as codified in Chapter 54 of the General Statutes, particularly § 4-183(j) which provides that:
 The court shall not substitute its judgment for that of the agency as to the weight of evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .
In addition, General Statutes § 4-183(i) requires that the appeal be confined to the record unless there are alleged irregularities in procedure not shown in the record. See also
General Statutes § 4-183(h).
The Uniform Administrative Procedure Act (UAPA) governs determinations made by administrative agencies, and the scope of review is very limited. Perkins v. FOIC, 228 Conn. 158,164, 635 A.2d 783 (1993); Ottochian v. FOIC, 221 Conn. 393,397, 604 A.2d 351 (1992). The court may not "retry the case or substitute its own judgment for that of the [administrative agency]", but must only decide, "in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochianv. FOIC, supra, 221 Conn. 397.
"Conclusions of law reached by the administrative agency must stand if the court determines that they resulted CT Page 12605 from a correct application of the law to the facts found and could reasonably and logically follow from such facts." Perkinsv. FOIC, supra, 228 Conn. 165. "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." Id.
"[T]he general rule under the Freedom of Information Act is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the FOIA legislation." (Internal quotation marks omitted.) Ottochian v. FOIC, supra, 221 Conn. 398. "The burden of proving the applicability of an exception to the FOIA rests upon the party claiming it." Id.
BHA argues that the FOIC's conclusions (1) that a "significant portion" of the September 28, 1993 meeting of the Commissioners included discussion of personnel contracts, (2) that no personnel search committee of the whole had been created by the BHA, (3) that the September 28, 1993 assembly of the Commissioners was a "meeting" under General Statutes § 1-18a(b), (4) that the BHA commissioners discussed the appointment, employment, performance, evaluation, health or dismissal of a public officer at the exclusion of the Complainant, and (5) that the BHA had voted to authorize its counsel to obtain a legal opinion regarding a personal matter are all "unsupported by fact" and are "unreasonable, arbitrary, and in abuse of its discretion."
The FOIC argues that its final decision correctly found and concluded that BHA's September 28, 1993 meeting was not a meeting of a personnel search committee, that BHA used the meeting to privately discuss Kasparian's employment, appointment or dismissal without giving any notice of the meeting or filing any minutes of it, and without giving Kasparian the opportunity to exercise his statutory right to require that discussion be conducted in public.
General Statutes § 1-21(a) provides that the meetings of all public agencies are, with the exception of executive sessions, to be open to the public. There is no dispute that the plaintiff is a "public agency" within the meaning of General Statutes § 1-18a(a). Thus, the only way a meeting of a public agency may be closed to the public is if the gathering is not a "meeting" as defined by General Statutes § 1-18a(b), or if the CT Page 12606 agency permissibly convenes in executive session, for the reasons permitted by General Statutes § 1-18a(e).
General Statutes § 1-18a(b) excludes various gatherings from the definition of "meetings" that are subject to the FOI Act, but only one is relevant to this case:
 "Meeting" shall not include: Any meeting of a personnel search committee for executive level employment candidates. . . .
General Statutes § 1-18a(f) further defines the term "personnel search committee" as follows:
 "Personnel search committee" means a body appointed by a public agency, whose sole purpose is to recommend to the appointing agency a candidate or candidates for an executive-level employment position. . . . (Emphasis added).
If a meeting of a public agency is not excluded from the ambit of General Statutes § 1-18a(b) because it is a personnel search committee meeting (or some other kind of excluded meeting, such as a caucus or a social gathering), then the meeting must be open to the public unless the agency convenes in executive session for one of the purposes permitted under General Statutes § 1-18a(e). The only permitted purpose that is relevant to this case is contained in General Statutes § 1-18a(e)(1):
 "Executive sessions" means a meeting of a public agency at which the public is excluded for one or more of the following purposes: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting. . . . (Emphasis added).
Finally, unless a meeting is excluded from the General Statutes § 1-18a(b) definition of meetings subject to the FOI Act (and even if all or a portion of the meeting is conducted in executive session), the agency must file a notice before, and minutes (including a record of any votes taken) after, the CT Page 12607 meeting, pursuant to General Statutes § 1-21(a). General Statutes § 1-21(a) provides in relevant part:
 The votes of each member of any such public agency upon any issue before such public agency shall be reduced to writing and made available for public inspection within forty-eight hours and shall also be recorded in the minutes of the session at which taken, which minutes shall be available for public inspection within seven days of the session to which they refer. . . Notice of each special meeting of every public agency . . . shall be given not less than twenty-four hours prior to the time of such meeting by filing a notice of the time and place thereof . . . in the office of the clerk of such subdivision for any public agency of a political subdivision of the state. . . . Such notice shall be given not less then twenty-four hours prior to the time of the special meeting. . . . The notice shall specify the time and place of the special meeting and the business to be transacted. No other business shall be considered at such meetings by such public agency.
The FOI Commission's factual finding that a significant portion of the plaintiff's September 28, 1993 meeting was to discuss Kasparian's contract and whether to review it is reasonably supported by the evidence on the record.
The evidence on the record before the FOI Commission is that the plaintiff met on September 28, 1993 for about an hour. (ROR 13, Transcript, p. 67, testimony of Peter Imperator ["The meeting lasted for one hour, approximately one hour, and as I said, it was about the union contract and one particular item in that union contract was in dispute, and then the rest of the time was spent on contracts.]) Of that hour, somewhere between ten and twenty minutes was devoted to a discussion concerning a collective bargaining issue. (ROR 13, Transcript, pp. 23, 64 and 66). The remainder of the discussion was devoted to whether the plaintiff's management contracts, in particular, Kasparian's contract, should be renewed. (ROR 13, Transcript, p. 67 and 70). Thus, the evidence on the record clearly supports the FOI Commission's finding that a "significant", i.e. meaningful, portion of the September 28, 1994 meeting was devoted CT Page 12608 to a discussion of the contracts of the plaintiff's three management-level employees.
The FOI Commission's factual finding that no personnel search committee of the plaintiff had been created on September 28, 1993 is reasonably supported by the evidence on the record.
The evidence on the record before the FOI Commission is that the plaintiff at its July 20, 1993 meeting established a committee of the whole to review the contracts of its management level employees, and to consider whether to review or terminate those contracts. (ROR 5, Minutes of July 20, 1993 meeting. See also ROR 13, Transcript, p. 59, testimony of Mark Shultz. "It was my understanding at that time that no committee was established that date.") Transcript, p. 65, testimony of Peter Imperator [Q: "Do you recall at any time a search and selection committee being established? A: No."]; Transcript, p. 78, testimony of Joan Courchaine. See also ROR 15, Final Decision, ¶ 16, which finds, without challenge by the plaintiff, "that the committee that assembled on September 28, 1993 had not advertised any positions or sought any employment candidates, and did not convene for the purpose of reviewing, discussing or selecting any employment candidates").
Whether or not the plaintiff sometime after September 28, 1993 operated as a personnel search committee was irrelevant to the FOI Commission's factual findings. The only factual question before the Commission was whether a "personnel search committee" within the meaning of § 1-18a(f) met on September 28,1993. Section 1-18a(f) defines a "personnel search committee" as a committee whose "sole purpose" is to recommend a candidate or candidates for executive-level employment positions. The evidence on the record demonstrates that not only did no personnel search committee exist on September 28, 1993, but that when the plaintiff met on that date, it was to discuss only an issue that had to be resolved before any candidates could be considered — that is, whether the incumbent in the position would be rehired.
The FOI Commission correctly concluded as a matter of law that the assembly of the plaintiff on September 28, 1993 to discuss Kasparian's contract was a meeting within the meaning of General Statutes § 1-18a(b).
The FOI Commission's conclusion that the September 28, CT Page 12609 1993 meeting to discuss Kasparian's contract was a "meeting" within the terms of General Statutes § 1-18a(b) was a legal conclusion, not a factual finding. (ROR 15, Final Decision, ¶ 20). The plaintiff's only challenge to this conclusion is that the September 28, 1993 meeting was really a meeting of a personnel search committee, and thus not subject to the FOI Act's public meeting requirements. This issue is now fully addressed.
The FOI Commission's factual finding that the plaintiff discussed Kasparian's appointment, employment, or dismissal is reasonably supported by the evidence on the record.
The uncontroverted evidence on the record before the FOI Commission is that the plaintiff met on September 28, 1993 to discuss whether to renew Kasparian's contract. The plaintiff maintains that this discussion does not fall within the language of General Statutes § 1-19(b)(2) concerning the "appointment, employment, performance, evaluation, health or dismissal" of a public officer or employee. At the hearing before the FOI Commission, the plaintiff presented evidence that it had deliberately avoided "evaluation" of Kasparian, and that his past "performance" had not been discussed. In its brief to the court, the plaintiff now argues that Kasparian was not to have been "dismissed," but merely not re-appointed. Simply put, these distinctions do not matter. General Statutes § 1-18a(e)(3)(1) required that Kasparian be given the opportunity to require discussion concerning his employment, performance, evaluation, health or dismissal to be in public. For the plaintiff to avoid discussion of Kasparian's performance, evaluation, or even dismissal does not avoid the strictures concerning discussion of his employment or appointment. To discuss Kasparian's contract and whether or not it was to be renewed was to discuss his "employment" within the meaning of General Statutes § 1-18a(e)(1). If the contract was renewed, Kasparian's appointment as executive director was continued; if the contract was not renewed, then he was effectively dismissed from his employment.
The FOI Commission correctly concluded as a matter of law that the plaintiff's consensus to authorize a legal opinion was not merely discussion, but was a vote within the meaning of the FOI Act.
A public agency may not avoid the requirement to maintain a record of its votes under General Statutes § 1-21(a) by deeming its decision and action to be a "consensus," and thus CT Page 12610 simply avoiding the taking of a vote. The FOI Commission's conclusion that BHA's consensus to authorize the seeking of a second legal opinion operated as a vote subject to the reporting requirements of General Statutes § 1-21(a) is amply supported by the evidence. (ROR 15, Final Decision, ¶¶ 30 and 31; ROR 13, Transcript).
Because the decision of the FOIC is reasonably supported by the evidence on record, the decision of the FOIC is affirmed, and the BHA's appeal is dismissed.
LEONARD W. DORSEY STATE TRIAL REFEREE