[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Each of these consolidated cases is an administrative appeal from a final decision of the defendant, Freedom of Information Commission ("FOIC"), brought pursuant to General Statutes §§ 1-206 (d) (formerly § 1-21i) and 4-183. In each case, the plaintiffs, Chief of Police Department, Town of Windham and Police Department, Town of Windham, challenge the FOIC's decision requiring disclosure to the media and to the public documents and records compiled pursuant to Megan's Law, General Statutes § 54-102r, which reveal the identity and whereabouts of the prime suspect in a pending homicide investigation. The defendants are the FOIC and Trenton Wright, Jr. in Docket No. 99-0497252; the FOIC, Mark Reynolds and the Norwich Bulletin in Docket No. 99-0497253; and the FOIC, Paul Lewis and Fox 61 News in Docket No. 99-0497389.
Megan's Law, General Statutes § 54-102r, as amended by Public Act 1997, No. 97-183, requires a person convicted of certain sexual assault crimes to register and provide background information to the local chief of police or resident state trooper for the municipality in which the person resides. Since the institution of these appeals, General Statutes § 54-102r has been further amended and the documents at issue are currently available to the public on the Internet by the Connecticut Department of Public Safety. See Public Act 1998, No. 98-111, § 9; URL: http://www.state.ct.us/dps/sor.htm. These cases will be the only cases dealing with the disclosure of such information under General Statutes § 54-102r, as amended by P.A. 97-183. Therefore, the resolution of these appeals should preclude future litigation of the instant issue.
There is no dispute as to the underlying facts in these cases. In the three cases, the facts and the FOIC's final decisions vary only in minor details. Because the FOIC consolidated the hearings, the text of the transcript is identical.
On August 13, 1998, at approximately 7:00 p.m., the Willimantic Police Department received a distressed telephone call from the mother of an eleven year old girl, whom she reported missing. The mother reported that her daughter had been delivering newspapers near her home on her ususal [usual] route and had not returned for several hours. The missing child lived in an apartment complex comprised of approximately three hundred and twelve units located in both Willimantic and the adjoining town of Mansfield. Many of the missing child's relatives, friends and neighbors, in addition to many people in the surrounding community, were distraught.
The major crimes unit of the Connecticut State Police was called to assist in the investigation by the Willimantic Police Department. At CT Page 762 approximately 12:34 a.m. on August 14, 1998, a state police officer, using a tracking dog, discovered the body of the missing girl, the apparent victim of a homicide. Shortly thereafter, the major crimes task force, the county detectives and the state's attorney arrived at the apartment complex. The local and state police interviewed the victim's family, acquaintances, friends, and neighbors, and ultimately, everyone in the complex.
Soon after, the media began to investigate. Newspapers sent reporters and the television and radio media began to cover and report the incident. Extensive media coverage continued through the following days.
Requests for police records were made by the defendant, Channel 61, on August 14, and the requests continued until the records were released on August 28, 1998, after the arrest of the individual charged with the crime. The defendant, Trenton Wright, Jr., requested that the plaintiffs provide him with the most current list of sexual offenders registered with the police department as required by Megan's Law in a letter dated August 20, 1998. The defendant Norwich Bulletin made its request on August 18, 1998, requesting the same information. In each instance, the media and the public were denied access to the records sought until shortly after the arrest of the alleged perpetrator.
Having been denied access to Megan's list, Mr. Wright and representatives of the media each filed complaints with the FOIC, alleging that the Freedom of Information Act ("FOIA") had been violated.
On August 26, 1998, an individual was arrested for the crime and on the following day, August 27, 1998, the plaintiffs held a press conference announcing that the sexual assault registrations would be made available to all requesters. (Return of Record ("ROR"), Report of Hearing Officer, Docket No. 99 0497252, p. 126; Docket No. 99 0497253, p. 104; Docket No. 99 0497389, p. 105.)
Also on August 26, 1998, the FOIC designated Mary E. Schwind as hearing officer in all three contested cases, and a consolidated hearing was held on October 1, 1998. The hearing officer issued her proposed decision on November 6, 1998. Thereafter, on December 22, 1998, the FOIC issued notices of final decision in the three cases. The FOIC found that the plaintiffs violated the FOIA by denying access to the list at the time of each request. The FOIC ordered that:
 1. Henceforth, the respondents shall comply with the Freedom of Information Act provisions.
2. No civil penalties shall be imposed. CT Page 763
 3. The Commission notes that the respondents were under tremendous pressure to secure an arrest of the perpetrator, that they acted in good faith in this matter, and that they provided access to the list within hours of the arrest.
(ROR, Final Decision, Docket No. 99 0497252, p. 133; Docket No. 99 0497253, p. 109; Docket No. 99 0497389, p. 110.)
These administrative appeals to the Superior Court followed. Since the decision of the FOIC requires the plaintiffs to comply in the future with the provisions of the FOIA, the court finds that the plaintiffs are aggrieved within the meaning of General Statutes § 4-183. See Kellyv. Freedom of Information Commission, 221 Conn. 300 (1992).
In the present cases, the plaintiffs advance two arguments in support of their position. First, the plaintiffs argue that General Statutes § 1-210 (b) exempts from disclosure records of law enforcement agencies compiled in connection with the detection or investigation of crime. The plaintiffs argue that the FOIC erred when it ruled that the plaintiffs violated the law by not releasing the records to the media while the investigation was pending. Second, the plaintiffs argue immunity from the provisions of FOIA pursuant to General Statutes §1-201, which provides that the Division of Criminal Justice shall not be deemed to be a public agency except in respect to its administrative functions.
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . This limited standard of review dictates that, [w]ith regard to questions of fact, it is not the function of the trial court. to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The CT Page 764 burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC, 247 Conn. 95,117-18 (1998).
"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . An agency's factual and discretionary determinations are to be accorded considerable weight by the court. . . . Cases that present pure questions of law, however invoke a broaderstandard of review than is ordinarily involved in deciding whether, inlight of the evidence, the agency has acted unreasonably, arbitrarily,illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . It is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Brackets omitted; citations omitted; emphasis in original; internal quotation marks omitted.) Assn. of Not-for-Profit Providers for the Aging v. Dept.of Social Services, 244 Conn. 378, 389 (1998).
The plaintiffs first argue that the legislature recognized certain situations in which the public interest requires non-disclosure of records. The plaintiffs rely upon General Statutes § 1-210 (b) which provides, in pertinent part:
 Nothing in the Freedom of Information Act shall be construed to require disclosure of: . . . (3) Records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of . . . witnesses not otherwise known whose safety would be endangered or who would be subject to threat or intimidation if their identity was made known, . . . (C) information to be used in a prospective law enforcement action if prejudicial to such action. . . .
(Emphasis added.)
The plaintiffs support their argument with the FOIC's finding of fact that "members of said community were fearful for their children and enraged at the unknown perpetrator of such crime. It is further found CT Page 765 that verbal threats were made against the life of such perpetrator in the presence of police officers." (ROR, Final Decision, Docket No. 99-0497252, p. 132; Docket No. 99 0497253, p. 108; Docket No. 99 0497389, p. 109.) Despite the initial appeal of the plaintiffs' argument, the court finds it unavailing.
The quoted statute, by its express terms, refers to the purpose for which the records were originally "compiled", not the purpose for which they were subsequently used by law enforcement agencies at the time of a given FOIA controversy. Here, the records at issue were compiled pursuant to Megan's Law and were not compiled in connection with the detection or investigation of a crime.
The legislative history of Megan's Law indicates that the purpose of that statute is notification to the public and to prevent and protect against crime occurring, not to detect crime or to provide an investigative tool for the police. As originally enacted in 1994, Public Act 1994, No. 94-246, codified as General Statutes § 54-102r, the sexual offender registration information was confidential and not subject to disclosure. Under General Statutes § 54-102r (g), the information was subject to disclosure only to law enforcement agencies for law enforcement purposes or governmental agencies for specified purposes. In 1997, Public Act 97-183 amended General Statutes 54-102r by deleting the aforesaid subsection (g). The legislative history to Public Act No. 97-183 clearly indicates that the amendment was offered in order to give the community an opportunity to protect itself and its children from harm. 40 S.Proc., Pt. 7., 1997 Sess., pp. 2301-03; 40 H.R.Proc., Pt. 11, 1997 Sess., p. 3939. The amendment was intended to "eliminate the restrictions in the law that make the registration not subject to the freedom of information statutes." 40 H.R.Proc., Pt. 11, 1997 Sess., p. 3945, remarks of Representative Delgobbo. Public Act 97-183 was in effect during August, 1998, when the events in the present case occurred. As stated earlier in this decision, disclosure of the registration information has been further broadened through P.A. 98-111, which makes the list available on the Internet.
The administrative records before this court indicate that the registration records at issue were not compiled in connection with the investigation of a crime These records were maintained by and available for public inspection at the Windham Police Department until August 17, 1998. (ROR, Transcript, Docket No. 99 0497252, p. 93; Docket No. 99 0497253, p. 71; Docket No. 99 0497389, p. 72.) Indeed, at the hearing before the FOIC, the plaintiff police chief testified that these records were available prior to August 17, 1998, were compiled independently of the investigation and were not connected to the investigation. (ROR, Transcript, Docket No. 99 0497252, p. 95-96; Docket No. 99 0497253, p. CT Page 766 73-74; Docket No. 99 0497389, p. 74-75.)
In the present cases, the FOIC correctly interpreted General Statutes § 54-102r, as amended by P.A. 97-183, to mean that the records at issue were public records within the meaning of the FOIA and thus subject to the FOIA's disclosure requirements. The legislative history of the act as well as the administrative records in the present cases clearly demonstrate that the registration list at issue was compiled to give notice to citizens of the state of convicted sexual offenders in their midst. This registration list was not compiled in connection with the detection or investigation of a crime. Thus, the disclosure exemptions under General Statutes § 1-210 (b)(3) are inapplicable.
Relying on General Statutes § 1-201, the plaintiffs argue that they are immune from the authority of the FOIC. According to the plaintiffs, their acts of failing to disclose the records at issue were acts over which the FOIC had no authority. General Statutes § 1-201 provides in pertinent part:
 For the purposes of subsection (a) of section 1-200, the Division of Criminal Justice shall not be deemed to be a public agency except in respect to its administrative functions.
In support of this argument the plaintiffs rely upon Gifford v. Freedomof Information Commission, 42 Conn. Sup. 291 (1992), aff'd, 227 Conn. 641
(1993). The plaintiffs' reliance, however, is misplaced. The issue inGifford was limited to whether arrest reports must be disclosed during the pendency of a criminal prosecution. Gifford v. Freedom of InformationCommission, supra, 227 Conn. at 651.
In addition, there is no plausible argument that the maintenance of the Megan's Law list was the work product of the plaintiffs associated with a criminal investigation. Clearly, the list was compiled and maintained as an administrative function pursuant to the provisions of General Statutes § 54-102r. Thus, the plaintiffs here do not fall within the exempting provision of General Statutes § 1-201. Accordingly, the plaintiffs' second argument also must fail.
The court acknowledges the tremendous pressure felt by the plaintiffs to secure an arrest of the perpetrator of this crime and that the plaintiffs acted in good faith by temporarily withholding the documents at issue and providing access to the list within hours of the suspect's arrest. Nevertheless, the court is bound to apply the law. As stated above, the FOIA does not exempt the Megan's Law list from disclosure. CT Page 767
Based on the foregoing, the decisions of the FOIC in these matters will not be disturbed and the administrative appeals therefrom are dismissed.
Michael Hartmere, Judge