STATE LIBRARY *v.* FREEDOM OF INFORMATION COMMISSION ET AL.

CITY OF NORWICH ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(14415)
(14416)

Landau, Heiman and Spear, Js.

Argued January 19—officially released June 11, 1996

*Victor Perpetua*, with whom, on the brief, were *Catherine Wassel-Nasto*, commission counsel, and *Mitchell W. Pearlman*, general counsel, for the appellant (named defendant).

*Jane Richardson*, with whom was *James C. McGuire*, for the appellants (defendant Maria T. Hileman et al.).

*Linsley J. Barbato*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Ralph E. Urban* and *Bernard F. McGovern, Jr.*, assistant attorneys general, for the appellee (plaintiff in the first case).

*March S. Mandell*, for the appellees (plaintiffs in the second case).

*Jeffrey F. Gostyla* filed a brief for Connecticut Police Chiefs Association, as amicus curiae.

HEIMAN, J. This is a consolidated appeal.[1] In the first appeal, the defendant freedom of information commission (commission) appeals from two judgments of the trial court reversing the commission's decision ordering access to certain hearing transcripts. In the second appeal, the defendants Maria Hileman and the Day Publishing Company appeal from the same trial court judgments. The commission asserts that the trial court improperly (1) found that the plaintiffs were aggrieved by the decision of the commission where no evidence existed to support that conclusion, (2) found that the order of the commission failed to withstand scrutiny under the contracts clause of the United States constitution, and (3) sustained the administrative appeals

---

[1] Two administrative appeals were commenced by individual process and later consolidated for trial by the Superior Court. Subsequently, certain defendants appealed separately to this court from the judgments of the Superior Court. Those appeals are consolidated here.

because it failed to follow the applicable scope of review mandated in such appeals. Hileman and Day Publishing assert that (1) the trial court improperly found that the plaintiffs were aggrieved by the decision of the commission and that the court had subject matter jurisdiction, (2) the trial court improperly applied the standard of review appropriate in this matter pursuant to General Statutes § 4-183, (3) the trial court improperly found that the commission's decision was in violation of article one, § 10, of the United States constitution, and (4) the commission's decision protects the character and reputation of the individuals at issue. We agree with the defendants that the trial court improperly determined that the plaintiffs were aggrieved, and, on that ground, we reverse the judgments of the trial court.

The facts necessary to a resolution of this appeal may be summarized as follows. On September 30, 1964, the Norwich city council voted to establish a special five member committee from among the members of the council. The committee was authorized to investigate the official conduct of the Norwich police department and the officers and members thereof, pursuant to the Norwich city charter. The committee was established in response to allegations that complaints of misconduct by members of the police department had been reported to the chief of police and that no action had been taken by the chief to resolve the complaints.

The committee began hearings in October, 1964, and concluded the hearings in November, 1964. A total of fifty-four persons testified under oath at the hearings. Approximately one half of the witnesses were members of the Norwich police department. Some of the testimony related to the behavior of certain members of the Norwich police department. The testimony established that certain officers drank alcoholic beverages prior to going on duty and while on duty. Additional testimony concerned the administration of the Norwich police

department. Witnesses testified that defects existed concerning the safeguarding of keys to commercial buildings left in the possession of the police, that there were inadequate police patrols in the city at night, and that the rules and regulations of the department were in a book dated 1898 that had not been updated since that time. It was established that the rules and regulations book contained a list of livery stables and instructions for lighting gas lights. Moreover, the first aid section included bloodletting as a corrective measure. Further, testimony established that no training program existed for new officers nor were any continuing education programs in place for officers. Finally, testimony revealed that the detective division was understaffed, that the police department operated in much the same manner as it had twenty to fifty years prior to the hearings, and that the morale of the department was low.

In March, 1966, the Norwich city council voted that the transcripts of the hearings before the special committee be held for a period of six years and then destroyed in accordance with the provisions of General Statutes (Rev. to 1966) § 7-109.[2] In the fall of 1972, the city of Norwich sought permission from the public records administrator to destroy the hearing transcripts. See General Statutes (Rev. to 1972) § 7-109. The state archivist and the public records administrator both agreed that the records were of sufficient historical significance to the state as to justify their permanent retention. Accordingly, the request of the city to destroy the transcripts was denied. As an alternative, the public records administrator suggested that the transcripts could be transferred to the state library, and that such

[2] General Statutes (Rev. to 1966) § 7-109 provides in pertinent part: "Any official, board or commissioner of a municipality . . . may, with the approval of the administrative head of such municipality and of the state examiner of public records, destroy any document in his or its custody relating to any matter which has been disposed of and of which no record is required after six years from the date of such document. . . ."

transfer could be made under seal if disclosure of the contents would adversely affect the public security or financial interests of the state or the reputation or character of any person. The administrator suggested that under such circumstances, the state library would undertake to respect and preserve the confidentiality of the records for an agreed upon period of time. In April, 1973, eighteen volumes of transcripts of testimony taken by the special committee were transferred to the care of the state library to be held under seal and preserved for fifty years.

In December, 1992, Hileman, a reporter for the Day, a newspaper published in New London by the Day Publishing Company, requested that the archivist of the state library release copies of the transcripts of the testimony taken before the special committee. Hileman claimed that although the documents were sealed in 1973, there was no justification under the Freedom of Information Act for continuing to keep them sealed. In January, 1993, the state archivist notified Hileman that her request was denied. Thereafter, Hileman and the Day Publishing Company filed a complaint with the commission. The city of Norwich, the Norwich police department, Richard Abele, and James McGeowan were granted intervenor status.[3]

A commissioner held a hearing, and Hileman, the state archivist, Abele and McGeowan testified. In August, 1993, the commissioner issued a proposed finding to the parties that provided for disclosure of the transcripts at issue subject to certain redactions being made. In September, 1993, the proposed finding was considered by the commission. The state library, the city of Norwich, the Norwich police department, Abele,

---

[3] At the time of the special committee hearings and at the time of the filing of the appeals in this court, Abele and McGeowan were employees of the Norwich police department.

and McGeowan all objected to the proposed finding. The commission tabled the proposed finding and remanded the case to the commissioner for reconsideration.

In October, 1993, the matter was again considered by the commission. Over the continuing objection of the state library, the city of Norwich, the Norwich police department, Abele and McGeowan, the commission voted to adopt the commissioner's proposed finding with certain limited modifications that were proposed by the commissioner. Thereafter, the commission issued its final decision.

The state library, the city of Norwich, the Norwich police department, Abele and McGeowan (collectively the plaintiffs) appealed to the Superior Court from the commission's decision. The court found that each plaintiff was aggrieved by the decision of the commission, and the court sustained the plaintiffs' appeals. The commission, Hileman, and the Day Publishing Company (collectively the defendants) appealed to this court.

The dispositive issue in this appeal is whether the trial court properly found that the plaintiffs were aggrieved by the decision of the commission. We conclude that the trial court's finding of aggrievement was improper.

The cases involved contested matters before the commission, an administrative agency, and, thus, the right of appeal from the commission is governed by General Statutes §§ 1-21i (d)[4] and 4-183 (a).[5] Both §§ 1-21i (d)

---

[4] General Statutes § 1-21i (d) provides in pertinent part: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183 . . . ."

[5] General Statutes § 4-183 (a) provides in pertinent part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. . . ."

and 4-183 (a) require that a person who desires to appeal from a final decision of the commission be aggrieved by that decision. "[I]t is well-settled law that the question of aggrievement is a jurisdictional one and claims of aggrievement present an issue of fact for the determination of the trial court with the burden of proving aggrievement resting upon the plaintiffs who have alleged it." *Nader* v. *Altermatt*, 166 Conn. 43, 59, 347 A.2d 89 (1974). Pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. *Beckish* v. *Manafort*, 175 Conn. 415, 419, 399 A.2d 1274 (1978).

"The question of aggrievement is essentially one of standing . . . ." Id. Unless the plaintiffs could establish that they were aggrieved by the decision of the commission, they had no standing to appeal. Id. "The trial court must be satisfied, first, that the plaintiff alleges facts which, if proven, would constitute aggrievement as a matter of law, and, second, that the plaintiff proves the truth of those factual allegations. . . . The mere statement that the appellant is aggrieved, without supporting allegations as to the particular nature of the aggrievement, is insufficient." (Citation omitted; internal quotation marks omitted.) Id.

"[Our Supreme Court] has considered at length the criteria by which the question of aggrievement is to be determined. In *Nader* v. *Altermatt*, supra, [166 Conn.] 51, [the court] stated: 'The fundamental test by which the status of aggrievement for purposes of qualifying to take an appeal from an administrative order or regulation is determined encompasses a well-settled two-fold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must success-

fully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' " *Beckish* v. *Manafort,* supra, 175 Conn. 420.

Our review of the record and of the proceedings before the trial court reveals that the court failed to take evidence with respect to the plaintiffs' claimed aggrievement. Prior to hearing the appeals, the only source of information that the court had before it regarding any possible aggrievement was that contained in the administrative record. Under our law, however, a party may not properly rely on the administrative record to establish the fact of aggrievement, but instead, that party has the burden of proving aggrievement in the trial court. See *Mystic Marine Life Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 498, 400 A.2d 726 (1978); *Nader* v. *Altermatt,* supra, 166 Conn. 59; *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 508, 242 A.2d 705 (1968). The plaintiff must prove aggrievement as an essential prerequisite to the court's jurisdiction over the subject matter of the appeal. *Mystic Marine Life Aquarium, Inc.* v. *Gill,* supra, 493.[6] Here, the record on appeal does not reveal that the trial court considered competent evidence to establish the plaintiffs' claims of aggrievement. Without such evidence, the appeals were void, and the trial court was without jurisdiction to hear them. *Kerin* v. *Goldfarb,* 160 Conn. 463, 467, 280 A.2d 143 (1971). In light of our conclusion regarding the issue of aggrievement, we do not discuss the other claims raised by the parties.

The judgments are reversed and the cases are remanded to the trial court with direction to render judgments dismissing the appeals.

In this opinion the other judges concurred.

---

[6] We note that even the parties cannot properly confer jurisdiction on the court by agreeing that aggrievement exists. *Hughes* v. *Town Planning & Zoning Commission,* supra, 156 Conn. 509.