STATE LIBRARY *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(15522)
CITY OF NORWICH ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(15523)

Borden, Norcott, Palmer, McDonald and Peters, Js.

Argued March 27—officially released May 13, 1997

*Linsley J. Barbato,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Ralph E. Urban* and *Bernard F. McGovern,* assistant attorneys general, for the appellant in Docket No. 15522 (plaintiff state library).

*Marc S. Mandell,* for the appellants in Docket No. 15523 (plaintiff city of Norwich et al.).

*Victor R. Perpetua,* appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman,* commission counsel, for the appellee in both cases (named defendant).

*Jane Richardson,* with whom, on the brief, was *James C. McGuire,* for the appellees in both cases (defendant Maria T. Hileman et al.).

PETERS, J. Under both the general provisions of the Uniform Administrative Procedure Act; General Statutes § 4-183 (a);[1] and the specific provisions of the Freedom of Information Act; General Statutes § 1-21i (d);[2] only a person aggrieved by a final decision of the defendant freedom of information commission (commission) may appeal from that decision to the trial court. The sole issue in these consolidated appeals is whether the plaintiffs, the Connecticut state library (state library), the city of Norwich, Richard Abele and James McGeowan, have proven that they were each aggrieved by a decision of the commission ordering the release of certain documents to the defendant Maria T. Hileman, a reporter employed by the defendant Day Publishing Company, the publisher of a New London area newspaper.[3] The trial court, *Hurley, J.*, found that the plaintiffs had demonstrated their aggrievement and sustained their appeals. The defendants appealed[4] to the Appellate Court, which concluded that the trial court should have dismissed the plaintiffs' appeals on the ground that the plaintiffs had failed to establish their aggrievement. *State Library* v. *Freedom of Information Commission,* 41 Conn. App. 641, 648, 677 A.2d 470 (1996). Having

---

[1] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[2] General Statutes 1-21i (d) provides in relevant part: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. . . ."

[3] After obtaining a stay of the commission's order, the plaintiffs challenged that order in two separate appeals to the trial court, one filed by the state library, and the other filed by the city of Norwich, Abele and McGeowan. The Norwich police department also joined in the latter appeal. Upon motion, the trial court, *Teller, J.*, consolidated the two appeals.

[4] The defendants brought two separate appeals to the Appellate Court, one filed by Hileman and the Day Publishing Company, and the other filed by the commission. The Appellate Court consolidated these two appeals.

granted, in identical terms, the plaintiffs' petitions for certification,[5] we now reverse the judgment of the Appellate Court.

The relevant facts are described in the opinion of the Appellate Court. "On September 30, 1964, the Norwich city council voted to establish a special five member committee from among the members of the council. The committee was authorized to investigate the official conduct of the Norwich police department and the officers and members thereof, pursuant to the Norwich city charter. The committee was established in response to allegations that complaints of misconduct by members of the police department had been reported to the chief of police and that no action had been taken by the chief to resolve the complaints.

"The committee began hearings in October, 1964, and concluded the hearings in November, 1964. A total of fifty-four persons testified under oath at the hearings. Approximately one half of the witnesses were members of the Norwich police department. Some of the testimony related to the behavior of certain members of the Norwich police department. The testimony established that certain officers drank alcoholic beverages prior to going on duty and while on duty. Additional testimony concerned the administration of the Norwich police department. Witnesses testified that defects existed concerning the safeguarding of keys to commercial buildings left in the possession of the police, that there

---

[5] The plaintiffs brought two separate petitions for certification to appeal, one filed by the state library in Docket No. 15522, and the other filed by the city of Norwich, Abele and McGeowan in Docket No. 15523. We granted both petitions limited to the following issue: "In the circumstances of this case, did the Appellate Court properly conclude that the plaintiffs failed to prove their aggrievement?" *State Library* v. *Freedom of Information Commission*, 239 Conn. 903, 904, 682 A.2d 1013 (1996). Although the Norwich police department was a party to the appeals brought to both the trial court and the Appellate Court; see footnote 3; it did not join in either petition for certification to this court and is, therefore, not a party to the present appeals.

were inadequate police patrols in the city at night, and that the rules and regulations of the department were in a book dated 1898 that had not been updated since that time. It was established that the rules and regulations book contained a list of livery stables and instructions for lighting gas lights. Moreover, the first aid section included bloodletting as a corrective measure. Further, testimony established that no training program existed for new officers nor were any continuing education programs in place for officers. Finally, testimony revealed that the detective division was understaffed, that the police department operated in much the same manner as it had twenty to fifty years prior to the hearings, and that the morale of the department was low.

"In March, 1966, the Norwich city council voted that the transcripts of the hearings before the special committee be held for a period of six years and then destroyed in accordance with the provisions of General Statutes (Rev. to 1966) § 7-109.[6] In the fall of 1972, the city of Norwich sought permission from the public records administrator to destroy the hearing transcripts. See General Statutes § (Rev. to 1972) § 7-109. The state archivist and the public records administrator both agreed that the records were of sufficient historical significance to the state as to justify their permanent retention. Accordingly, the request of the city to destroy the transcripts was denied. As an alternative, the public records administrator suggested that the transcripts could be transferred to the state library, and that such transfer could be made under seal if disclosure of the contents would adversely affect the public security or financial interests of the state or the reputation or char-

---

[6] General Statutes (Rev. to 1966) § 7-109 provided in relevant part: "Any official, board or commissioner of a municipality . . . may, with the approval of the administrative head of such municipality and of the state examiner of public records, destroy any document in his or its custody relating to any matter which has been disposed of and of which no record is required after six years from the date of such document. . . ."

acter of any person. The administrator suggested that under such circumstances, the state library would undertake to respect and preserve the confidentiality of the records for an agreed upon period of time. In April, 1973, eighteen volumes of transcripts of testimony taken by the special committee were transferred to the care of the state library to be held under seal and preserved for fifty years.

"In December, 1992, [Hileman] . . . requested that the archivist of the state library release copies of the transcripts of the testimony taken before the special committee. Hileman claimed that although the documents were sealed in 1973, there was no justification under the Freedom of Information Act for continuing to keep them sealed. In January, 1993, the state archivist notified Hileman that her request was denied. Thereafter, Hileman and the Day Publishing Company filed a complaint with the commission. The city of Norwich, the Norwich police department, Richard Abele and James McGeowan[7] were granted intervenor status.

"A commissioner held a hearing, and Hileman, the state archivist, Abele and McGeowan testified. In August, 1993, the commissioner issued a proposed finding to the parties that provided for disclosure of the transcripts at issue subject to certain redactions being made. In September, 1993, the proposed finding was considered by the commission. The state library, the city of Norwich, the Norwich police department, Abele and McGeowan all objected to the proposed finding. The commission tabled the proposed finding and remanded the case to the commissioner for reconsideration.

"In October, 1993, the matter was again considered by the commission. Over the continuing objection of

[7] At the time of the special committee hearings, Abele and McGeowan were members of the Norwich police department. *State Library* v. *Freedom of Information Commission,* supra, 41 Conn. App. 645 n.3.

the state library, the city of Norwich, the Norwich police department, Abele and McGeowan, the commission voted to adopt the commissioner's proposed finding with certain limited modifications that were proposed by the commissioner. Thereafter, the commission issued its final decision.

"The state library, the city of Norwich, the Norwich police department, Abele and McGeowan . . . appealed to the Superior Court from the commission's decision. The court found that each plaintiff was aggrieved by the decision of the commission, and the court sustained the plaintiffs' appeals. The commission, Hileman, and the Day Publishing Company (collectively the defendants) appealed to [the Appellate Court]." *State Library* v. *Freedom of Information Commission*, supra, 41 Conn. App. 643–46.

Concluding that the trial court's finding of aggrievement was improper, the Appellate Court reversed the trial court's judgments. The Appellate Court reviewed the established case law that makes a showing of aggrievement a jurisdictional prerequisite to an administrative appeal. Id., 646–48. It then examined the record and the proceedings before the trial court with respect to the plaintiffs' proof of aggrievement in these appeals. It observed that the trial court had "failed to take evidence with respect to the plaintiffs' claimed aggrievement. Prior to hearing the appeals, the only source of information that the court had before it regarding any possible aggrievement was that contained in the administrative record." Id., 648. The Appellate Court held that "a party may not properly rely on the administrative record to establish the fact of aggrievement, but instead, that party has the burden of proving aggrievement in the trial court." Id. Because, in the view of the Appellate Court, the trial court had before it no competent evidence upon which to base a finding that the plaintiffs were aggrieved, the Appellate

Court determined that "the trial court was without jurisdiction to hear" the plaintiffs' claims. Id.

Without disputing that the trial court failed to hold an evidentiary hearing on aggrievement, the plaintiffs nevertheless seek reversal of the judgment of the Appellate Court on two grounds, one procedural and one substantive. As a matter of procedure, they claim that, if the necessary facts can be found upon examination of the administrative record, the pleadings and the briefs of the parties, then aggrievement may be proven without an evidentiary hearing by the trial court. As a matter of substance, they claim that the record in these appeals supports the trial court's finding of aggrievement. We agree with both of the plaintiffs' claims.

I

For guidance regarding the procedural requirements for a showing of aggrievement in an administrative appeal, we begin with two principles that are well established in our case law. It is undisputed that proof of aggrievement is a jurisdictional prerequisite for an administrative appeal. See, e.g., *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 223–24, 602 A.2d 1019 (1992); *Beckish* v. *Manafort*, 175 Conn. 415, 419, 399 A.2d 1274 (1978). It is also undisputed, as the cases relied upon by the Appellate Court indicate, that an administrative record may be insufficient to establish aggrievement, as a matter of fact, when the record does not contain evidence sufficient to support such a claim. See, e.g., *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 498, 400 A.2d 726 (1978); *Nader* v. *Altermatt*, 166 Conn. 43, 59, 347 A.2d 89 (1974); *Hughes* v. *Town Planning & Zoning Commission*, 156 Conn. 505, 508, 242 A.2d 705 (1968).

The question that we have not expressly addressed previously is whether an administrative record is always

insufficient, as a matter of law, to satisfy a plaintiff's burden to prove aggrievement. We impliedly came to the contrary conclusion, however, in *Kelly* v. *Freedom of Information Commission*, 221 Conn. 300, 603 A.2d 1131 (1992). In *Kelly*, we looked to the administrative record in order to determine whether the chief state's attorney was aggrieved by a decision of the commission requiring the disclosure of an arrest report during the pendency of a criminal prosecution. Id., 310–14. We now hold expressly that, without an evidentiary hearing in the trial court, a plaintiff may prove aggrievement by relying on facts established in the record as a whole, including the administrative record. See *Hughes* v. *Town Planning & Zoning Commission*, supra, 156 Conn. 508 (aggrievement may appear "on the face of the record").

Our conclusion finds strong statutory support in § 4-183 (i), which was amended in 1988 as part of a comprehensive revision of the Uniform Administrative Procedure Act. See Public Acts 1988, No. 88-317, § 23. Subsection (i) provides in relevant part: "The appeal *shall* be . . . confined to the record. If . . . facts necessary to establish aggrievement are not shown in the record, proof limited thereto *may* be taken in the court. . . ."[8] (Emphasis added.) The conjunction, in one subsection, of both "shall" and "may" indicates that the legislature intended to attach different consequences to each of these statutory instructions about the procedures governing an administrative appeal. See, e.g., *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 694, 674 A.2d 1300 (1996). We are persuaded that the legislature has unambiguously manifested its intention that adminis-

[8] The 1988 amendment to § 4-183 (i) added the language providing that the trial court may take additional evidence in those cases in which the "facts necessary to establish aggrievement are not shown in the record . . . ." Public Acts 1988, No. 88-317, § 23.

trative appeals ordinarily are to be decided on the basis of the record. See *Blaker* v. *Planning & Zoning Commission*, 219 Conn. 139, 146, 592 A.2d 155 (1991). Pursuant to § 4-183 (i), proof of aggrievement requires an evidentiary hearing only in the absence of a sufficient administrative record.

As a matter of procedure, therefore, the Appellate Court's rulings cannot be reconciled with either the reasoning of *Kelly* v. *Freedom of Information Commission*, supra, 221 Conn. 300, or the text of § 4-183 (i). The judgments of the trial court were not improper because of that court's failure to hold an evidentiary hearing with respect to the plaintiffs' aggrievement. The judgments of the Appellate Court must, therefore, be reversed.

II

As a matter of substance, the Appellate Court did not reach the merits of the trial court's finding that the plaintiffs had established their aggrievement. In the interests of judicial economy, and because this substantive question has been fully briefed, we have decided to resolve it ourselves. See *Almeida* v. *Liberty Mutual Ins. Co.*, 234 Conn. 817, 826, 663 A.2d 382 (1995). We conclude that the record supports the trial court's finding that the plaintiffs have proven their aggrievement.

In appeals pursuant to the Freedom of Information Act, aggrievement is determined in accordance with a twofold test. See General Statutes § 1-21i (d). This test requires a showing of: "(1) a specific personal and legal interest in the subject matter of the [commission's] decision; and (2) a special and injurious effect on this specific interest." *Board of Pardons* v. *Freedom of Information Commission*, 210 Conn. 646, 649, 556 A.2d 1020 (1989); *Kelly* v. *Freedom of Information Commission*, supra, 221 Conn. 308; *Rose* v. *Freedom of Information Commission*, supra, 221 Conn. 230; *Zoning Board*

*of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 502, 503 A.2d 1161 (1986); *Local 1303 & Local 1378* v. *Freedom of Information Commission,* 191 Conn. 173, 176, 463 A.2d 613 (1983). We agree with the trial court that each of the plaintiffs has met this test.

The state library and the city of Norwich are aggrieved because the commission's disclosure order potentially impaired their rights under a contract requiring the documents in issue to remain sealed.[9] See *Kelly* v. *Freedom of Information Commission,* supra, 221 Conn. 311 (test for aggrievement is whether personal rights are affected). Further, if the order of the commission were to be disobeyed, library directors would be exposed to the risk of criminal and civil sanctions, an exposure that we have held is sufficient to establish aggrievement. See *Board of Pardons* v. *Freedom of Information Commission,* supra, 210 Conn. 650.

Abele and McGeowan are aggrieved because the commission's order requires the disclosure of documents relating to an investigation in which they were directly involved. See *Rose* v. *Freedom of Information Commission,* supra, 221 Conn. 231. We are not persuaded to the contrary by the argument of the defendants that the commission's partial redaction of the contents of these documents absolutely ensures that Abele and McGeowan are not aggrieved. "Aggrievement is established if there is *some possibility,* as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Emphasis added; internal quotation marks omitted.) Id., 230; see also *United Cable Television Service Corp.* v. *Dept. of Public Utility Control,* 235 Conn. 334, 343, 663 A.2d 1011 (1995). For

---

[9] Although the defendants contend that no contract ever existed between the city of Norwich and the state library, we cannot ignore, at least for purposes of determining aggrievement, the trial court's explicit and uncontradicted finding that those parties had "entered into an agreement" pursuant to which the library would store the relevant documents.

the purpose of establishing aggrievement, police officers have a specific personal and legal interest in disclosures that may, even in redacted and indirect ways, contain evaluations of the past performance of their public duties. *Kelly* v. *Freedom of Information Commission,* supra, 221 Conn. 310–14.

Our conclusion that the plaintiffs have established their aggrievement resolves only one of the issues that the defendants raised in their appeals to the Appellate Court. See *State Library* v. *Freedom of Information Commission,* supra, 41 Conn. App. 642–43 (describing substantive issues raised). These appeals, therefore, must be remanded to the Appellate Court for review of the decision of the trial court sustaining the plaintiffs' appeals on their merits.

The judgments of the Appellate Court are reversed and the cases are remanded to that court for consideration of the remaining issues in the appeals.

In this opinion the other justices concurred.