[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This administrative appeal involves a property known as 22 Boardwalk, Groton Long Point. Plaintiff, Elizabeth M. Willis owns the property. There are now three buildings on the property, a main dwelling house, a garage and a bath house. Plaintiff plans to remove the garage and bath house and enlarge the main house. Plaintiff requested the Groton Long Point Association zoning enforcement officer to issue a zoning permit so that she could enlarge the main house. The zoning enforcement officer refused to grant the zoning permit.
Plaintiff filed an appeal with the Zoning Board of Appeals. CT Page 1840 On November 20, 1996, the Zoning Board of Appeals denied plaintiff's appeal.
This timely appeal followed.
AGGRIEVEMENT
The plaintiff bares the burden of showing aggrievement. C.G.S. § 8-8 (b). Aggrievement may be established by "facts established in the record as a whole, including the administrative record." State Library v. Freedom of Information Commission, 240 Conn. 824, 830, 832 (May 13, 1997).
The defendant board does not contest aggrievement.
The plaintiff owns the property. Obviously, she is harmed by the defendant's ruling.
The court finds the plaintiff is aggrieved.
DISCUSSION
The court is called upon to review the action of the zoning board of appeals which in turn had reviewed the action of the zoning enforcement officer.
 "[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Caserta v. Zoning Board of Appeals, 226 Conn. 80 (1993).
The court examines the action of the zoning board of appeals and the basis for its action.
At the court's request, the parties filed a stipulation dated January 8, 1998. That stipulation provides as follows:
STIPULATION
 The parties stipulate and agree that the record before the defendant Zoning Board of Appeals contains evidence of the following facts: CT Page 1841
 1. Plaintiff's property consists of a single building lot which measures 40 feet by 150 feet; the area is 6,000 square feet.
 2. There are three structures on the lot, the main house, a cabana or bath house and a garage building.
 3. The zoning regulations limit building coverage to 25% of lot area; in this case 1,500 square feet.
 4. The three existing buildings occupy 36.4% of lot area, i.e., 2,184 square feet.
5. The bath house covers 90.8 square feet.
 6. The garage building covers 587 square feet.
 7. The existing main house now covers 1,506.2 square feet. [2,184 — 90.8 — 587 = 1,506.2]
 8. The existing buildings are permitted as nonconforming structures.
 9. Plaintiff proposes to remove the bath house and garage and construct an addition to the house. With the addition proposed by plaintiff, the house will cover 33.3% of the lot's square footage, i.e. 2,000 square feet.
 10. The lot coverage of the main house would be changed from 1,506 to 2,000 square feet by the proposed renovation.
 11. The plaintiff is the owner of the property which is the subject of the appeal, and is the applicant for the zoning permit."
Stipulation, January 8, 1998.
The regulations provide that "building coverage" shall not exceed 25% of the lot area. See Section 4.3.1. A definition CT Page 1842 section within the Regulations provides as follows:
 "1.4 Building Coverage: The percentage which the aggregate building area of all buildings on the lot bears to the area of the lot." Regulations.
The property is 40 feet by 150 feet; the area is 6,000 square feet. Stipulation, ¶ 1. Under the Section 4.3.1, the maximum permissible area of building coverage is 25% of the lot area or 1,500 square feet. Stipulation, ¶ 3. The main house now covers 1,506 square feet. Stipulation, ¶ 7. Therefore, the main building is now nonconforming, although but slightly. Stipulation, ¶ 8. According to plaintiff's proposal, the main house would be increased to cover 2,000 square feet. Stipulation, ¶ 10.
The three buildings as they now exist occupy 36.4% of the lot, i.e. the lot coverage of the three buildings is 2,184 square feet. Stipulation, ¶ 4. The garage covers 587 square feet. Stipulation, ¶ 6. The bath house covers 90.8 square feet. Stipulation, ¶ 5. According to the plaintiff's plan, when the bath house and garage are eliminated, and the proposed main house is constructed, the degree of lot coverage will be reduced to 33 1/3 percent.
In essence, plaintiff claims she can increase the nonconforming lot coverage of the main house from 1,506 square feet to 2,000 square feet because the nonconforming lot coverage of the proposed main house will be less than the existing total lot coverage of the three existing buildings.
Regarding this claim, the zoning enforcement officer stated:
 "Approval is denied for the building of this two-story addition due to problems with lot coverage. The existing structure is in violation of Regulations 4.3.1 — Coverage — which states that the maximum allowable coverage is 25 percent and the existing combined coverage on the lot is 34 percent. This nonconformity is allowed to stand because of `Grandfathering' clauses."
Document dated September 30, 1996 signed by Kenneth W. Steere, Zoning Enforcement Officer. Return of Record, Item # 2. CT Page 1843
The Zoning Board of Appeals upheld the zoning enforcement officer. It gave the following as its reasons:
 "The structures in question have preexisted zoning regulations, cover more than 25 percent of the lot, and are therefore grandfathered. Reallocation of coverage to maintain the same level of nonconforming lot coverage as well as creating new nonconforming bulk is not permitted by the Zoning Regulations." Record of the Zoning Board of Appeals, Record of Decision, November 20, 1996. [Return of Record, Item 10].
Section 8.1.2 of the Regulations is the focus here. The Regulation reads as follows:
 "No nonconforming building or structure shall be extended, maintained, repaired, enlarged, reconstructed or structurally altered in any way except in accordance with the provisions of this Section and with proper permits.
 "a. Normal maintenance and repair, structural alteration in, and moving, reconstruction, extending or enlarging of, a building or structure of nonconforming bulk is permitted if the same does not increase the degree of or create any new conforming bulk in such building, or if any increased or additional nonconforming bulk is created only by the raising of the structure (including decks) to meet the Flood Damage Prevention Regulations of Section 10. Without being limited thereto, the nonconforming bulk of any building or structure shall include any enclosed or roofed volume which either exceeds the maximum allowable building coverage or lies in any required front, or rear yard, as prescribed in Section 4.3.1."
The project proposed by the plaintiff is prohibited by § 8.1.2. Building coverage is one constituent of "bulk." Regulation of building coverage is included in the bulk regulations, and more specifically, § 8.1.2. Regulations, § 1.8. Since the proposal will increase the degree of lot coverage by the main house and create additional nonconforming bulk in the CT Page 1844 main house, it is not permitted under § 8.1.2.a. Section 8.1.2.a's use of "building" and "structure," both in the singular, belies plaintiff's contention that the definition of "building coverage" contained in § 1.4 when read with § 8.1.2 permit the proposed construction.
The defendant zoning board of appeals correctly applied the regulations to the plaintiff's application and properly denied her appeal.
The appeal is dismissed.
Parker, J.