[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal by the plaintiffs, the Hartford Courant Company and staff writer Jack Dolan, from a May 10, 2000 decision of the defendant, Freedom of Information Commission ("FOIC"), dismissing the plaintiffs' request for alleged records of the defendant, Department of Public Safety ("the Department").
The certified record in this case shows the following. On September 15, 1999, Dolan wrote to the Department seeking a digital copy of all the fields of information typically produced in a person's criminal history within the Department database. Dolan also agreed to pay any costs associated with the request. (Return of Record ("ROR"), Item 3, p. 12.)
The Department wrote to Dolan on September 16, 1999 that requests for criminal history are governed by General Statues § 29-11, which imposes a fee of $25 per criminal history search. Upon providing the name and date of birth or social security number, each request would be processed. (ROR, Item 4, p. 13.) On October 26, 1999, Dolan again wrote to the Department contending that the database itself was a public record, that the Hartford Courant would pay for the cost to reproduce the database and that he was seeking "information which is already routinely released to the public." (ROR, Item 5, p. 14.)
The Department replied on October 29, 1999 that the database contained both public and non-disclosable information. "At the present time, there are approximately 815,000 records total within the database. The cost therefore would be $20,375,000.00 (815,000 records @ $25.00 per search)." (ROR, Item 6, p. 15.) The plaintiffs thereupon appealed to the FOIC alleging that the estimated fee described in the October 29, 1999 letter of the Department was in violation of the Freedom of Information Act ("FOIA."), and that the imposition of the fee denied them access to the copy of records requested. (ROR, Item 1, p. 1.)
At the hearing before the FOIC, a witness for the Department, Attorney CT Page 5741-am Dawn Carnese, testified that "it's not simply the push of a button that would produce this record. And if there is any non-conviction information . . . we have to insure that the individual that would be receiving [a person's record] would not be getting that . . . (ROR, Item 7, p. 25.) Carnese also explained that the Department would have to check each requested record to see if the conviction information might contain both juvenile and adult convictions. The juvenile convictions would have to be redacted. (ROR, Item 7, pp. 26-27.)
Another witness for the Department, Fred Oldenburg, the agency data processing manager, described the database. "A relational database is made up of tables. The criminal history file is made up of 17 tables. . . . There has not been to my knowledge any requests for a copy of the entire database. If we just copied it off it would be a group of tables that would make no sense to anybody. In order to copy the database so that someone could use it electronically we would have to write a number of programs depending on the data and then we would have to be very careful about what we were giving out. Everything that ever comes out of that database on an individual basis is reviewed by an individual to make sure it's accurate. . . ." (ROR, Item 7, pp. 29-30.)
Asked by the Department attorney whether there was any way to segregate conviction information from non-conviction information within the present format of the database, Oldenburg replied: "In that form there's no program available. Something would have to be written and probably could be written." (ROR, Item 7, p. 30.) Dolan followed up on this in cross-examination:
 Q. Now, when you say within the present format of the database do you mean there's no program?
 A. And the database is not in a file or record format; it's in tables. So to give you a record, which records make up a file, programs would have to be written to bring all the information from the tables together.
 Q. And you mentioned that it would probably take [the programer] about a week?
 A. No, you asked about one thing. It would take her more than that to give you the entire file with all the scrutiny she would have to go through to make sure that information is correct and is CT Page 5741-an disclosable.
Q. How long do you think that would take?
 A. You would have to talk to [the programer]. I don't know. Plus, we have to sit down and set down the rules, also, what can and cannot be disclosed.
Q. Is that possible?
A. Yeah, I'm sure it is.
Q. Do you think it would cost $20 million?
A. To write the program? No, I don't think it would cost that.
Q. Do you think it would cost $1 million?
 A. No. No. We're talking weeks of effort to look at the database, lay down the rules and write the program and then we would have to double check and make sure everything was correct. We couldn't just write it and give it to you, we'd have to print it out and look at it because it is very sensitive data.
(ROR, Item 7, pp. 33-34.)
In its final decision, the FOIC found that the plaintiffs' "complaint is limited to the issue of the estimated fee." (ROR, Item 10, p. 57, ¶ 8.) The decision of the FOIC continued:
 9. The complainants contend that they do not seek a criminal history record search of each name in the respondents' database, but rather a copy of the database, absent data contained in exempt fields, and, further, that the fee schedule set forth in § 1-212, G.S. [formerly § 1-15, G.S.], controls.
* * *
 15. It is found that the request for a copy of the CT Page 5741-ao respondents' database . . . constitutes a request under § 29-11, G.S.
 16. It is concluded that § 29-11, G.S., which establishes a charge of $25.00 per criminal history record information search, supersedes § 1-212, G.S. [formerly § 1-15, G.S.]. Accordingly, the fee assessed . . . did not violate the FOI Act, as alleged in the complaint.
(ROR, Item 10, pp. 57, 59.)
Based on this record the FOIC dismissed the plaintiffs' complaint, (ROR, Item 10, p. 59) and this appeal followed. Aggrievement is found as the plaintiffs have claimed that they have been denied access to public records. Wildin v. Freedom of Information Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 572290 (June 17, 1998, DiPentima, J.), aff'd, 56 Conn. App. 683 (2000); see alsoState Library v. Freedom of Information Commission, 240 Conn. 824
(1997).
The FOIC's decision must be upheld "if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the [FOIC], we cannot disturb the conclusion reached by [it]. . . ." (Citations omitted.) Domestic Violence Services of GreaterNew Haven, Inc. v. FOIC, 47 Conn. App. 466, 470 (1998). The court's "ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation and internal quotation marks omitted.) Cadlerock Properties Joint Venture, L.P. v.Commissioner of Environmental Protection, 253 Conn. 661, 676 (2000).
The parties agree that there is an exception to the disclosure provisions of FOJA for "[r]ecords . . . exempted by . . . state statutes." General Statutes § 1-210 (b)(10); see, e.g., Green v. Freedom ofInformation Commission, 178 Conn. 700, 702 (1979) ("[W]e are not required to weigh on the scales of statutory construction the public policies underlying the Freedom of Information and Fair Employment Practices Acts because the former . . . specifically excepts from its provisions those cases covered by contrary provisions of federal law or state statute.").
There are a series of state statutes which govern the obtaining of CT Page 5741-ap criminal history record information. Under General Statutes §54-142k(a), "[e]ach . . . agency holding criminal history record information shall establish reasonable hours and places of inspection of such information." The further subsections of this statute make clear that conviction information is available to the public without restriction while there are restrictions on the obtaining of non-conviction information. General Statutes § 54-142k(b)-(d). Pursuant to this statute, the Department has established a bureau of identification to provide requests for criminal history record information. General Statutes § 29-11 (a). The charge for obtaining such information is $25 per search. General Statutes § 29-11 (c)(7).
This statutory scheme envisions an individual search for each person's criminal history record. Section 54-142g(a) of the General Statutes defines "criminal history record information" to be records maintained as to "each offender." Section 54-142g(c) of the General Statutes defines "conviction information" to mean "criminal history record information which has not been erased . . . and which discloses that a person has pleaded guilty or nolo contendere to, or was convicted of, any criminal offense, and the terms of the sentence." (Emphasis added.) Section54-142i(c) requires the Department to insure that direct access to computerized criminal history record information is available only to authorized officers or employees.
In another case, holding applicable the state statute exemption from FOIA disclosure, the court stated: "We must, if possible, reconcile subsidiary provisions of a statute with the general tenor of the statute as a whole. . . ." (Citation omitted.) Galvin v. Freedom of InformationCommission, 201 Conn. 448, 459 (1986). In Healy v. Freedom of InformationCommission, 18 Conn. App. 212, 217, cert. denied, 212 Conn. 803 (1989), the court applied a statutory exemption from FOIA commenting that the statute in question "create[d] a specific and self-contained system of disclosure and nondisclosure."
Looking to the provisions of § 54-142g through p and § 29-11, there is a statutory scheme for the process of obtaining individual
criminal history record information. Therefore, the appropriate charge for this individual history is not, as the plaintiffs argue, one charge for all the requested data, but per § 29-11 (c), $25 for each record sought.
This does not end the matter. The FOIC not only held that § 29-11
determined the fee to be charged to the plaintiffs for individual searches, but also declared that § 1-212 was inapplicable. To see CT Page 5741-aq § 1-212 in context, § 1-211 (a) provides:
 Any public agency which maintains public records in a computer storage system shall provide, to any person making a request pursuant to the Freedom of Information Act, a copy of any nonexempt data contained in such records, properly identified, on paper, disk, tape or any other electronic storage device or medium requested by the person, if the agency can reasonably make such copy or have such copy made. Except as otherwise provided by state statute, the cost for providing a copy of such data shall be in accordance with the provisions of section 1-212.
Section 1-212 provides in part:
 (b) The fee for any copy provided in accordance with subsection (a) of section 1-211 shall not exceed the cost thereof to the public agency. In determining such costs for a copy . . . an agency may include only:
 (1) An amount equal to the hourly salary attributed to all agency employees engaged in providing the requested computer-stored public record, including their time performing the formatting or programming functions necessary to provide the copy as requested, but not including search or retrieval costs except as provided in subdivision (4) of this subsection;
 (2) An amount equal to the cost to the agency of engaging an outside professional electronic copying service to provide such copying services. . . .
(3) The actual cost of the storage devices. . . .
 (4) The computer time charges incurred by the agency in providing the requested computer-stored public record where another agency or contractor provides the agency with [such] . . . services. . . .
In Taconic Data Corp. v. Town Clerk, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 572137 (June 11, 1998, McWeeny, J.), the predecessor statutes to §§ 1-211 (a) and 1-212 (b) CT Page 5741-ar were considered. There, the town clerk defendants relied upon a statutory per-page fee for deeds in calculating the fee for electronic copies of the grantor/grantee land records index. The plaintiff, as here, brought a FOIA complaint because of the proposed fee.
The court indicated: "It is not disputed that the $1.00 a page fee is not related to the towns' costs in copying the diskettes. For example, the Groton index diskette cost over $9,000 at the per page fee. The actual cost of copying would be, at most, a few hundred dollars." TaconicData Corp. v. Town Clerk, supra, Superior Court, Docket No. 572137, p. 3. The FOIC had concluded that the per-page fee statute superseded the copying fee provisions of the predecessor of § 1-212 (b).
The court held that the FOIC had erred in its statutory interpretation. "In this spirit the court views § 7-34a(a) as controlling as to paper copies, but inapplicable to electronic data requests." Taconic Data Corp. v. Town Clerk, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 572137, p. 5. "Allowing the town clerks to charge thousands of dollars more than their costs in providing a copy of an electronic disk containing public information" denies access to government records. Id., 6. The court held that the statutory exemption was to be narrowly construed and the "electronic disk format is available as a matter of right." Id.
Following the reasoning of Taconic, the plaintiffs argue that the provisions for the disclosure and the resulting costs for obtaining individual data, discussed above, do not supersede the provisions of § 1-212 (b); rather the two tracks must be read in harmony. To quote the plaintiffs: "[W]hat [the plaintiffs] sought is not what General Statutes § 29-11 (c)(7) contemplated as a `criminal history record information search'. Rather, it is a request for data in computer-stored public records within the meaning of General Statutes § 1-211 (a), a subject not dealt with — and therefore not "otherwise provided' — in § 29-11 (c); but governed instead by General Statutes § 1-212 as to fees." (Plaintiff's Brief, p. 10.)
The court agrees with the plaintiffs to the extent that it should consider whether the Taconic rationale applies on this record. The plaintiffs should not have to pay the $25 per record fee when requesting a database "if the agency can reasonably make such a copy or have such copy made." (Emphasis added.) General Statutes § 1-211 (a).
To the court, the plaintiffs have two difficulties with the Taconic
precedent. The first is that the evidence before the FOIC was that, unlike CT Page 5741-as the diskettes in Taconic, the requested the Department database was not in existence. As seen in the record references above, the existing database would have to be altered to exclude non-conviction information. This would be a modified program that the Department "would devise." (Plaintiff's Brief, p. 9.)
The agency is not obliged to furnish data when it cannot "reasonably"make a copy or have a copy made. As was said in the legislative history to Public Acts 1991, No. 91-347: "What this bill seeks to do is bring us into the computer age by allowing our constituents, our people, to ask for non-exempt data through FOI in any media that is reasonable to be given to these people." 34 H.R. Proc., Pt. 20, 1991 Sess., p. 7453. There is no indication in this language mandating that a new program be developed so that a different set of information might be furnished.
The agency may charge a fee for "programming functions necessary to provide the copy as requested," § 1-212 (b)(1), but this section relates to the "computer-stored public record." The FOIA does not require the agency to "create documents." Baron v. Freedom of InformationCommission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 342975 (October 26, 1999, Hartmere, J.); see, e.g., General Statutes § 1-200 (5) ("`Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method.") As the United States Supreme Court has stated in interpreting the federal FOIA: "The Act does not obligate agencies to create . . . documents; it only obligates them to provide access to those which it in fact has created and retained . . . even though the agency's failure to [create a document] deprives the public of information which might have otherwise been available to it. . . ." (Citations omitted.) Kissinger v. ReportersComm. for Freedom of the Press, 445 U.S. 136, 152, 100 S.Ct. 960,63 L.Ed.2d 267 (1980).
Second, even if General Statutes § 1-211 (a) requires the agency to take reasonable steps to re-formulate the data on request, there is insufficient evidence in the record to support the conclusion that the request was "reasonable." While the Department witnesses indicated that to write the program would be "possible," they also stated that "[w]e're talking weeks of effort to look at the database." (ROR, Item 7, p. 34.) This is not merely reworking existing information into a technologically-acceptable format for distribution. CT Page 5741-at
Under these circumstances, the FOIC properly concluded that the plaintiffs are not entitled to rely upon § 1-212 (b) to establish fees in a computer storage system, leaving § 29-11 as the appropriate alternative and exception to FOIA. The FOIC did not act unreasonably, arbitrarily, illegally, or in abuse of its discretion in reaching its conclusion. Ottochian v. Freedom of Information Commission, 221 Conn. 393,397 (1992).
The plaintiffs' appeal is therefore dismissed.
Henry S. Cohn, Judge