[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs Lee and Helen Fingar appeal a decision of the defendant Environmental Protection Commission (EPC) of the Town of Darien which approved, with conditions, a joint application by the defendants Dominick Miceli and Annette Miceli for a permit to conduct regulated activity within a wetlands area.
 I — Jurisdiction
General Statutes § 22a-43, which also refers to General Statutes § 8-8, applies to appeals from the Darien EPC, the body authorized to determine wetlands permit applications in Darien. Appeals must be commenced by service of process within fifteen days of the publishing of notice of the EPC's decision. Notice of approval of the Micelis' application was published on January 18, 2001 [Return of Record (ROR) Item 6] and the appeal was commenced when service on all necessary parties was completed on February 1, 2001. The appeal is timely.
Any person owning land within ninety feet of the wetlands at issue may appeal a decision of the EPC. General Statutes § 22a-43 (a). At the hearing Lee Fingar testified that he and his wife had owned property since 1977 on the eastside of, and directly across, Wakeman Road from the two Miceli parcels involved in the permit application. The Fingar property is designated as Lot 47 on what appears to be a tax assessor's map. (ROR, Item 9.) The Miceli lots are designated Lots 28A and 28B. (Id.) After Fingar's testimony the defendants orally moved to dismiss the appeal on the ground that no evidence had been given at the hearing as to the distance between the Fingar property and the wetlands on the Micelis' properties.
The plaintiffs have pointed to State Library v. Freedom of InformationCommission, 240 Conn. 824 (1997) as support for the proposition that aggrievement can be established by evidence in the record. In that case CT Page 13009 the Connecticut Supreme Court was specifically dealing with the aggrievement requirements in the Uniform Administrative Procedure Act and the Freedom of Information Act. See General Statutes §§ 4-183 (a), 1-21i
(d). In State Library the Supreme Court spoke in broad terms, providing "guidance regarding the procedural requirements for a showing of aggrievement in an administrative appeal. . .". 240 Conn. 824, 831
(1997). Specifically addressing the question of whether "an administrative record is always insufficient, as a matter of law, to satisfy the plaintiffs burden to prove aggrievement," the court stated:
We now hold expressly that, without an evidentiary hearing in the trial court, a plaintiff may prove aggrievement by relying on facts established in the record as a whole, including the administrative record. See Hughes v. Town Planning Zoning Commission, supra, 156 Conn. 508
(aggrievement may appear "on the face of the record":).
Id., 832
The above language would appear to apply as well to this case as other administrative appeals. There are several documents in the record of this case which provide evidence that the Fingars' property is almost directly across Wakeman Road from the Miceli properties and that the wetlands on the Miceli properties extend to a point approximately 20 feet from that road. (ROR, Items 9, 30, 31, 33.) The court finds that, even if the Fingars' property only extends to the eastern edge of Wakeman Road it is within fifty feet of the Micelis' wetlands. The Fingars are statutorily aggrieved, and this court has jurisdiction to hear and decide their appeal.
 II — The Standard of Judicial Review
The plaintiffs have the burden of proving that the EPC acted improperly in approving the Micelis' application. Samperi v. Inland WetlandsAgency, 226 Conn. 579 (1993). In carrying this burden the plaintiffs must show more than simply that another decision maker, such as this court, might have come to a different result than the EPC. The trial court is not going to retry the issues; rather, the plaintiffs must show that the record of the EPC proceedings does not contain substantial evidence to support its decision. Id.
. . . the reviewing court must sustain the [department's] determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support CT Page 13010 any such reason must be substantial; . . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action . . .
Newtown v. Keeney, 234 Conn. 312, 319 (1995). Judicial review of the EPC's decision is limited to a review of the record developed in the administrative process. Huck v. Inland Wetlands and Watercourses Agency,203 Conn. 525 (1987).
 III — Discussion
A. Joint Application
The Fingars initially argue that the EPC improperly considered a joint application by the Micelis. The application made by the Micelis concerned both Lot 28A owned by Annette Miceli and Lot 28B owned by Dominick Miceli. The Fingars point to Section 6.1 of the EPC regulations which state that "[n]o person shall conduct . . . a regulated activity without obtaining a permit" and Section 2.1 (w) defining person as
 "any person, firm, partnership, association, corporation, company organization or legal entity of any kind . . .
(ROR, Item 79.) The Fingars contend that under its regulations the EPC had no authority to consider an application made by two people who own separate pieces of property but who paid only one application fee.
The regulation language quoted above simply does not support this contention. There is no provision in the regulation barring a joint application by two persons owning separate, but contiguous properties. Moreover, in this case the Micelis' application was based on a proposed substantial change of the common lot line between their adjacent parcels which would necessitate further application to the Planning Zoning Commission and Zoning Board of Appeals if the EPC permitted the requested activities. Thus, the Micelis' joint application allowed consideration of the proposed project as it was intended to go into effect with the CT Page 13011 altered boundaries. This court will not disturb what appears to be a sensible and efficient means to approach this project.
B. The Present Application and an Earlier Application
The Fingars note that an earlier application by the Micelis was rejected by the EPC in 1998 and argue that the present application should not have been approved because Section 11.7 of the EPC Regulations require that an application which has been denied "shall not be resubmitted unless the proposal is modified in a fashion that substantially changes the impact which resulted in the denial" (ROR, Item 79.)
To evaluate this and other claims, a review of the history of the two Miceli lots and their existing condition is necessary. Lots 28A and 28B were created in 1972. Both lots have frontage on the westerly side of Wakeman Road, although Lot 28A which is south of Lot 28B only has a narrow strip of land connecting it to the road. Lot 28B is the northernmost of the two lots and has greater frontage on Wakeman. (ROR, Item 9.) Together the two lots cover slightly less than 1.1 acre of which approximately 94% is regulated wetlands. (ROR, Item 73, p. 4.)
The two lots were purchased by Dominick and Louis Miceli as tenants-in-common in 1972. When Louis died his interest in the lots went to his wife Annette. In 1997, Dominick and Annette exchanged deeds so that Dominick and Annette became the sole owners of Lot 28B and Lot 28A respectively. (ROR, Items 61e, f, h, i.) In January 1998 Dominick and Annette filed a joint application with the EPC to build a single family residence on each of the two reconfigured lots. This application was designated EPC 7-98, and it was denied in April 1998. (ROR, Items, 29, 34.)
In 2000, the Micelis filed another joint application, EPC 56-00. There are undeniable similarities between the two applications. Viewing the two lots together, all of the western portion and most of the eastern portion of the area, nearer Wakeman Road, are wetlands. Therefore, both applications propose to reconfigure the lot lines to allow more frontage on, and building area near, the road. Both applications call for two small single family residences with garages with a large conservation easement to the rear and west of the structures. The applications also call for the widening and relocation of a small unnamed stream to the rear of the houses.
The differences between EPC 7-98 and EPC 56-00 are partially described in the minutes of the joint meeting of the EPC and ZBA held November 8, CT Page 13012 2000 (ROR, Item 69.) There Donald Ferlow of the engineering firm of Stearns Wheeler explained that the footprint of the proposed residences had been reduced in size from 1,006 square feet to 800 square feet. He also noted that a proposed stone wall separating the residences from the conservation area had been moved eastward toward the buildings. Whereas, EPC 7-98 had a total wetland impact of .22 acres (of which .18 acres would be permanently lost) the new application would result in a wetland impact of. 18 acres and a permanent loss of. 16 acres.[1] (Id, p. 13; ROR, Item 30.) A review of the site plans associated with the applications (ROR Item 34 — site plan for EPC 7-98; ROR Item 31 — site plan for EPC 56-00) shows that the proposed residence structures have been moved much closer to Wakeman Road in the later application necessitating ZBA approval of a variance to the setback requirements. (See also ROR, Item 69, p. 2.)
The plaintiffs point to the statements of Julie Foss, P.E. of Malcolm Pirnie, Inc., engineers hired by neighbors opposing the Micelis' application that the 2000 application "substantially mimics the 1988 application with little reduction to permanent wetlands loss and little to no reduction on the amount of disturbance and length of relocation of the stream channel." (ROR, Item 61n, p. 2; see also ROR, Item 69, p. 8.) Foss also stressed that building only one residence would substantially reduce the wetlands impact.
In response, EPC emphasizes that a report, known as the "HEC-RAS"[2]
study, addressing the impact of the proposed Miceli development on flood and storm conditions was available to the EPC in its assessment of the Micelis' latest application, but not available at the time the previous application was rejected (the initial HEC-RAS report is dated October 1998). The HEC-RAS analysis, in the words of Michael Petti, P.E. of Stearns Wheeler, the applicants' engineers, "conclusively demonstrates that the proposed development plan will not aggravate flooding along Wakeman Road or anywhere else" (ROR, Item 37, p. 3.) The effect of the 1998 application on potential flooding had been a subject before EPC that year as well as during the most recent application process.
The court also notes that the parties' briefs made extensive reference to a communication by the EPC at the time it rejected EPC 7-98 containing recommendations by the EPC as to how the Micelis' proposal could be modified. This document (ROR, Item 61j) was excluded from the record filed in court by agreement of the parties. However, it is referred to in the EPC resolution conditionally approving the new Miceli application, CT Page 13013 EPC 56-00. That resolution commented:
 In 1998, the EPC denied without prejudice application EPC 7-98 by the [sic] Dominick and Annette Mecili for proposed development of two single-family residences on the two parcels. As shown through their April 15, 1998 letter, the EPC believed that the 1998 plan was close to an appropriate design and that they believed that some form of reasonable development of the land could be achieved. This letter made recommendations regarding modifications of the proposal. This subject application is a response to that denial.
(ROR, Item 73, p. 9.) It appears clear that the EPC, at least implicitly, invited another application from the Micelis and is evidence of what it believed would be sufficient substantial changes to warrant the Commission's review of another application. Based on the changes described above, and the EPC's own actions, the court finds no violation of Section 11.7 of the EPC Regulations.
C. A More Prudent and Feasible Alternative
Both state law and the EPC regulations require that an application for a permit to undertake regulated activities in a wetlands is to be denied if a "feasible and prudent" alternative course of action exists. General Statutes § 22a-41 (b); EPC Regulation § 10.3. Before the local wetlands agency (EPC), the applicant must prove that a feasible and prudent alternative does not exist; where the agency makes such a finding and an appeal is taken, the plaintiff must prove a lack of substantial evidence for that finding. Samperi v. Inland Wetlands Agency, supra226 Conn. 587 and 593.
In this case, the EPC found, as stated in its resolution conditionally approving the Micelis' application, "the current proposal is the most prudent and feasible alternative, which minimizes environmental impact while still allowing some form of development on each of the two lots." (ROR, Item 73, p. 11.)
The plaintiffs claim that the EPC acted illegally and arbitrarily because a more prudent and feasible alternative to what the EPC approved existed. The plaintiffs focus their contentions on the EPC's finding (ROR, Item 73, p. 11) that had the application proposed one residence on the two Miceli lots "it would have had a lesser impact" (Id.) The EPC had concluded that it could not require the applicants to follow this approach which would reduce the combined property value by the value of one building lot. (Id.) CT Page 13014
The plaintiffs correctly point out that the EPC did not conclude, or indicate, which applicant's lot would be so reduced in value, but the court does not think that omission makes any difference. If only one residence was permitted, two possible scenarios occur. Either a residence is permitted on only one of the two lots leaving the other as a non-buildable lot, or a merger of the two lots is required with the residence located on both of the two pre-merger lots. In the first case, a lot is made valueless as a building lot, an impermissible result. Gilv. Inland Wetlands Watercourses Agency, 219 Conn. 404 (1991). In the second case, this court knows of no legislative or judicial authority that empowers the EPC to force a merger of two separately owned parcels of land. The court therefore, finds that the EPC wisely concluded this was not a feasible and prudent alternative.
D. Other Alternatives
The Fingars further contend that the Micelis failed to prove the lack of other feasible and prudent alternatives, among them a lesser size and scale of the proposed houses and a smaller fill platform. As noted, the EPC found the Micelis' application as the most prudent and feasible alternative; therefore, the question before the court is whether there was substantial evidence for this conclusion.
The proposed development of the Micelis' properties has a long history. In addition to the 1998 application for single family residential development, the Micelis also proposed multiple family and affordable housing units although these never came before the EPC. The consideration of application EPC 56-00 by EPC was lengthy and in depth. Before the Commission were several analyses presented by the Micelis' engineers, including the HEC-RAS study (which was updated from 1998, ROR, Item 18) and the opinions of the neighbors' engineers. The EPC also hired Donald Smith, P.E. as an independent consultant. (ROR, Item 73, p. 5; ROR., Item 21.) Neighbors of the Wakeman Road — Miceli property area were afforded significant input both individually (e.g. ROR, Items 16, 17, 19-20, 25, 27, 28.) and through counsel's presentations (ROR, Items, 69, 70.) There were public hearings on this application on three different dates, one of which was a joint hearing with the Darien ZBA (ROR, Items 69-71.) In addition, EPC staff directed specific questions to the applicants between the public hearings. (E.g. ROR, Item 24.)
The court has reviewed the full record in this case and finds there is substantial evidence, as defined by our courts, to sustain the EPC action. There is substantial evidence in the record that the proposed residences were scaled down in size to affect the wetlands as minimally as possible and still be feasible. The EPC Chair noted the houses were CT Page 13015 small by Darien standards (ROR, Item 70, p. 4) and Mr. Ferlow stated that his research showed the proposed 800 square foot footprint was 1.c. the minimum amount for a residence. (Id. 9.) With regard to the application's proposed impact on the wetlands and flooding, the EPC explicitly accepted the testimony Michael Petti, P.E. and Mr. Smith that the proposal would not aggravate or adversely affect the site's absorption or transmission of flood waters and that the fill used was the minimum possible consistent with the construction proposal (ROR, Item 73, p. 7; Item 69, pp. 4-7; Item 21; Item 69, pp. 8-11). The Commission also noted that the parts of the wetland area are presently being adversely affected by the dumping of debris, a condition that would cease with development. (ROR, Item 73, p. 7; Item 69, p. 3.)
The EPC fully considered all aspects of possible wetlands impact from the effects of relocating and widening the unnamed stream through the property, to water quality, erosion and even mosquitos. (ROR, Item 73. pp. 7-8) The evidence presented by Micelis, mostly through Ferlow, supported the EPC findings. (ROR, Items, 69, 70.) As discussed above, the EPC carried out a careful evaluation of alternatives which included more than just the single residence concept. The conclusions are supported by the substantial evidence in the record.
The EPC resolution conditionally approving the Micelis' application EPC 56-00 is in itself a model of clarity and careful preparation. More importantly, the resolution evinces the patience, thoroughness, and informed common sense of the EPC members and staff. The concerns and rights of private citizens, applicants and neighbors alike, the mandates of the statutes and regulations, and the intricacies and possibilities contained in the surfeit of environmental and engineering information available were all carefully considered, fairly balanced and ultimately properly determined.
 Conclusion
For the reasons stated above, the appeal is dismissed.
 ___________________ ADAMS, J.